# Richmond

## Aubrey S. Dodson, Jr., and Another v. Commonwealth of Virginia.

April 22, 1946.

Record No. 3086.

Present, All the Justices.

The opinion states the case.

*Basil G. Watkins* and *L. H. Shrader*, for the plaintiffs in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Separate warrants issued against Aubrey S. Dodson, Jr., and Arthur G. Dodson. In them it is charged that they did on the 6th day of April, 1945, unlawfully operate a public nuisance on Rt. 29, known as the Old English Tavern, violating section 55 of A. B. C. Act, Code 1942, section 4675(55).

Their cases came on to be heard by the Trial Justice, who on June 8, 1945, found each of them guilty. They appealed to the Circuit Court of Campbell County; their cases came on to be heard on September 12, 1945. There was there pending against them in some manner not made

entirely clear four separate warrants. In addition to the public nuisance charge, each was charged with the possession of illegal whiskey. A jury was empanelled and evidence heard. On motion of the defendants the charges of possessing illegal whiskey were dismissed. On the nuisance charges these verdicts were returned: "We the jurors do find A. S. Dodson, Jr., guilty of operating a house of nuisance as charged in the warrant and fix punishment and fine at $100. *Dollars* & 60 days in jail. (Signed) W. L. Burton, Foreman", and "Sept. 12, 1945. We the jurors do find Arthur Dodson guilty of operating a house of nuisance as charged in the warrant and fix punishment and fine at $100. *Dollars* fine & 60 days in jail. (Signed) W. L. Burton, Foreman".

To these judgments the Court adds: "The defendants having indicated their intention to appeal, execution is suspended for thirty days in order to enable the said defendants to apply to the Supreme Court of Appeals of Virginia for a writ of error and *supersedeas*. It is further ordered that the said term in jail be served on the State Convict Road Force, if said defendants are physically fit for road work; but if not, then on the State Farm for Defective Misdemeanants."

On October 26, 1945, we granted a writ of error and supersedeas.

The Dodsons are brothers. They purchased a building known as the Old English Tavern near Lynchburg in Campbell County on Route 29 and operated a tavern there. Shortly after their purchase, Aubrey S. Dodson, Jr., enlisted in the Navy and served as a commissioned officer until January, 1945.

Aubrey, at that time, had a license to operate a business in this Tavern which authorized him to sell soft drinks and food. During his absence it was in charge of one Norman Mayberry, supervised by the brother, Arthur, who lived near by.

On April 6, 1945, Aubrey, who had been discharged from the Navy, was at home, and went to Lynchburg to see his

mother who was sick in a hospital there, leaving Mayberry in charge. It was then that Arthur, who lived in the country, came to the Tavern to inquire by telephone as to his mother's condition.

At this time the Sheriff of Campbell County, who had reason to believe that in the operation of this Tavern the law was being violated, secured the services of one Pete Johnson to secure the necessary evidence. He, with his deputies and Johnson, went to the Tavern and sent Johnson in to buy whiskey. For that purpose he gave him a ten dollar bill and a five dollar bill, both marked for identification. This was ten o'clock at night on April 6th. They stood on the outside to watch. Johnson bought a one-fifth quart of whiskey, price seven dollars, and tendered in payment this ten dollar marked bill. About this time Arthur came into the Tavern and at Mayberry's request gave to Johnson the three dollars in change due to him. The five dollars which Johnson had he still has unless he has spent it. Aubrey, upon his return from Lynchburg, found the Tavern door locked.

Among errors assigned it is said that the presiding judge appears to have been of the opinion that the defendants were guilty, and in various ways, inadvertently perhaps, in the course of the trial conveyed this impression to the jury.

While the Sheriff, J. L. Miles, was being examined, he said that Johnson told him that he had previously bought whiskey at this Tavern. Objection was made to this and counsel asked that the jury disregard this statement. The Court said: "Oh, yes, the jury will disregard what Pete Johnson told him."

The Tavern register was offered in evidence. Objection was made to its introduction on the ground that a particular offense was charged to have been made on a certain date. The Court said: "Under the statute the time is not limited. If you want to amend the warrant to show how the register was kept from the beginning you can do that". And later said to the jury: "I think the warrant is broad enough to cover and the register may be introduced for the purpose of

showing he failed to keep a proper register on that day. Of course you can make such cross examination as you may deem proper as to any of the evidence introduced."

Afterwards the jury was told not to consider this register for the time being.

While Pete Johnson was being examined, this register was again brought into question and the same objection was made to it. This then occurred: "By the Court: All right, gentlemen of the jury, go back in your room. We will be here the balance of the week."

Aubrey was questioned as to his service in the Navy and as to the date of his discharge. This then occurred:

"By the Court: What has that got to do with the case?

"By Mr. Watkins: It has some bearing on the running of the business.

"By the Court: What kind of discharge doesn't make any difference.

"By Mr. Watkins: I want the jury to know the facts of the case.

"By the Court: It has no relevancy at all."

Mayberry testified before the Trial Justice when these cases were first heard. He was questioned as to his evidence then, and was asked: "Don't you know you are under indictment for perjury and having lied about that in court at that time"? A. Yes, sir."

During cross examination this occurred:

"By the Court:

"Q. And you told a lie about it the first time?

"A. Yes, sir, but I was telling it by listening at what somebody else said. I didn't know any better and didn't have any better sense.

"Q. Did Arthur Dodson tell you to sell it to Pete?

"A. He said, 'It's all right, let him have it.'

"Q. Did he know you were going to sell it to Pete Johnson?

"A. Why certainly."

The witness stands aside.

"By the Court: That is one time the truth was told in court.

"By Mr. Watkins: I want to except to the remark made by the Court and ask for a mistrial in this case."

The Court then asked the members of the jury: "Did you hear what the Court said?" They answered that they did not. Whereupon the motion to declare a mistrial was overruled. Counsel heard what the judge said, and the stenographer heard what he said and took it down.

Howard Roberts was present when the raid was made. After he had been examined and cross-examined and was about to be excused, the Judge asked him: "Did you see Arthur give Mayberry the change? Did you see any money pass between Arthur Dodson and Mayberry?" "A. No, sir."

While Arthur was being examined he was asked if he had not theretofore been convicted of selling beer and wine and that his license had been revoked. During a colloquy which ensued the Court said: "As a matter of fact, has he been convicted of selling whiskey, in a court of record?" Counsel replied that he had been convicted by a trial justice of selling wine and beer after his license was revoked. The jury which had been sent out returned into Court and was told by the Judge to disregard this incident.

While Aubrey was undertaking to explain that some of the irregularities charged against him occurred while he was in the Navy, the Court told him: "Let counsel argue the case. Just ask questions Mr. Thompson, and you answer the question and don't argue."

As we have seen, counsel asked for a suspending order and was given thirty days. The record was not completed in that time and an additional suspension was asked for. Counsel explained that his time had been taken up by previous commitments. The stenographer was questioned:

"Q. Mr. McCarthy, is there anybody else that the defendants could have gotten to have copied your record and transcribed your notes?

"A. No, sir, no one that I know of."

The motion for further suspension was denied. The

Court said: "Therefore, in view of your failure to act with the degree of diligence and good faith contemplated by the Court at the time the execution of the sentence was suspended, your motion for a further extension of time is denied."

The defendants were re-arrested and put in jail.

■ Under Code, section 4930, the period of suspension is within the sound judicial discretion of the judge. But as was said by the Court in *Ramey* v. *Commonwealth*, 145 Va. 848, 133 S. E. 755: "This discretion cannot be exercised in such manner as to deprive one convicted of crime of a fair opportunity to [be heard] * * * ." And in *Barbee* v. *Murphy*, 149 Va. 406, 141 S. E. 237, the Court said that thirty days did seem to be a short time.

■ No one of the incidents mentioned, of itself, would warrant a reversal, but taken in the aggregate, we think that the jury knew what the judge thought, and were influenced by it. Since this case is to be retried we have not undertaken to discuss the evidence. For the reasons given, it is reversed and remanded.

*Reversed and remanded.*