45 F.3d 428
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 TYSONS TOYOTA, INCORPORATED, Plaintiff-Appellant,
v.
GLOBE LIFE INSURANCE COMPANY; Virginia Surety Company; Pat
Ryan & Associates, Incorporated; Commonwealth
Dealers Casualty Company, Ltd.,
Defendants-Appellees.
TYSONS TOYOTA, INCORPORATED, Plaintiff-Appellee,
v.
GLOBE LIFE INSURANCE COMPANY; Virginia Surety Company; Pat
Ryan & Associates, Incorporated, Defendants-Appellants,
and
Commonwealth Dealers Casualty Company, Ltd., Defendant.
TYSONS TOYOTA, INCORPORATED, Plaintiff-Appellee,
v.
COMMONWEALTH DEALERS CASUALTY COMPANY, LTD., Defendant-Appellant,
and
Globe Life Insurance Company; Virginia Surety Company; Pat
Ryan & Associates, Incorporated, Defendants.
 Nos. 93-1359, 93-1443, 93-1444.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1993.
Decided Dec. 29, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-92-1489-A)
 E.D.Va.
 REVERSED AND REMANDED IN PART, AND AFFIRMED IN PART.
 ARGUED: William Daniel Sullivan, COLLIER, SHANNON, RILL & SCOTT, Washington, DC, for appellant. Frank Eugene
 Brown, Jr., MAYS & VALENTINE, Alexandria, VA, for appellees. ON BRIEF: Neal Goldfarb, Washington, DC, for appellant. Cynthia A. Foulk, MAYS & VALENTINE, Alexandria, VA; John H. Herbig, Dawn B. DeBoer, PARKER, POLLARD & BROWN, Richmond, VA, for appellees.
 Before RUSSELL and WIDENER, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this diversity action, plaintiff Tysons Toyota, Inc. (Tysons) appeals the district court's dismissal of its four-count suit against defendants Globe Life Insurance Company (Globe), Virginia Surety Company, Pat Ryan & Associates, Inc. (Ryan), and Commonwealth Dealers Casualty Company (Commonwealth Casualty). Tysons' suit alleges participation in a breach of fiduciary duty by a former officer and director of Tysons, breach of contract, and conversion. The district court held that Tysons failed to allege sufficient facts to establish these claims and dismissed its amended complaint. We reverse.
 
 
 2
 On cross-appeal, the defendants appeal the district court's denial of their motions to dismiss based upon statute of limitations and res judicata defenses. We affirm.
 
 I.
 
 3
 Tysons' amended complaint alleged the following facts. Tysons operated a car dealership in Fairfax County, Virginia. Steve P. Horvath controlled Tysons' day-to-day operations as its president and was a member of its board of directors.[1] As part of its business, Tysons offered various insurance services to its customers. Tysons sold credit life and disability insurance policies as an agent for Globe and received commissions for these sales under an agreement. Tysons also offered extended warranty agreements. Tysons purchased an insurance policy from Virginia Surety that indemnified Tysons against costs incurred in honoring these agreements.
 
 
 4
 Horvath instructed both Globe and Virginia Surety to reinsure[2] their risks first through Commonwealth Dealers Life Insurance Company (Commonwealth Life) and later through Commonwealth Casualty. Horvath had acquired 100 shares of participating stock in Commonwealth Life in 1978 and 100 shares of participating stock in Commonwealth Casualty in 1982. The bylaws of both reinsurance companies expressly limited ownership of their participating stock to persons empowered to select the primary insurers for car dealerships with respect to credit life, disability, and extended warranty insurance. Horvath qualified to own participating stock because he controlled several car dealerships, including Tysons. The profits and losses of participating shareholders depended on the volume and profitability of the reinsurance business generated by the shareholder's dealership.
 
 
 5
 Tysons alleges that Horvath usurped a corporate opportunity that belonged to Tysons. Specifically, he invested in the business of reinsurance by acquiring stock in Commonwealth Life and Commonwealth Casualty without disclosing these transactions to Tysons, and he personally profited from the transactions. Thus, Horvath's ownership of the stock created a conflict of interest, resulting in a breach of his fiduciary duty to Tysons.
 
 
 6
 Tysons claims that the defendants recruited and enticed Horvath to breach his fiduciary duty to Tysons. Tysons contends that Globe maintained a two-tiered commission structure that provided an incentive "mechanism" for Horvath to profit at the expense of Tysons. One commission level applied when the dealership (or its principals) owned stock in the company with whom Globe reinsured the dealership's policies, and a higher level applied when the dealership did not own an interest in the reinsurance company. The difference between the two levels was paid to Commonwealth Life and Commonwealth Casualty as increased reinsurance commissions, from which Horvath personally profited as a preferred stock owner.
 
 
 7
 Tysons also alleges that Ryan, Globe, and Horvath devised a "warehousing" scheme to divert a percentage of the commissions owed to Tysons under its agreement with Globe to Horvath. Ryan and Horvath intended to create a new reinsurance company, owned by Horvath, to replace Commonwealth Casualty. Horvath instructed Globe to stop buying reinsurance from Commonwealth Casualty. Globe continued to pay Tysons the lower commissions and began "warehousing" the difference between the lower and higher levels. This excess would have been paid to Horvath's new reinsurance company, but since he abandoned the plan of establishing his own reinsurance company, Globe allegedly paid the warehoused funds to Horvath personally, instead of Tysons.
 
 
 8
 On December 22, 1989, Tysons filed a motion for judgment in the Circuit Court of Fairfax County, Virginia against the present defendants and others, who filed demurrers to all ten counts. The state court sustained the demurrers, with leave to amend most of the counts. Tysons filed an amended motion for judgment alleging fraud (Count I) and diversion of corporate assets (Count II). The state court overruled demurrers to Count I and sustained demurrers to Count II, with leave to replead. Tysons filed a second amended motion for judgment and the state court overruled demurrers to Count II. On May 15, 1992, Tysons took a voluntary nonsuit in state court.
 
 
 9
 On October 20, 1992, Tysons filed a four-count complaint against the present defendants in the United States District Court for the Eastern District of Virginia. Count I alleged that all of the defendants aided and abetted Horvath's breach of fiduciary duty. Count II alleged that they conspired with him and with each other to breach his fiduciary duty. Count III alleged a breach of contract action against Globe and Ryan.[3] Count IV alleged a conversion claim against Globe and Ryan.
 
 
 10
 On January 26, 1993, the district court dismissed the complaint, with leave to amend, because the allegations of Counts I, II, and IV did not satisfy the particularity requirement of Fed.R.Civ.P. 9(b) for averments of fraud, and Count III failed to allege the existence or a breach of contract. The district court also denied the defendants' statute of limitation and res judicata defenses as to counts I, II, and IV.[4] Tysons filed an amended complaint, which the district court dismissed on March 11, 1993.
 
 II.
 
 11
 We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6). Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993). Such a motion should not be granted "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all wellpleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. With this in mind, we turn to the alleged facts supporting the four claims in Tysons' amended complaint.
 
 A.
 
 12
 We first address Tysons' claim that the defendants aided and abetted Horvath's breach of fiduciary duty. The district court dismissed this claim for three reasons that we find unpersuasive. First, the district court held that the defendants, who were not in a fiduciary rela tionship with Tysons, did not have a duty to inquire whether Horvath had received Tysons' consent. For support of this proposition, the district court relied on Sternheimer v. Sternheimer, 155 S.E.2d 41 (Va.1967). Sternheimer, however, did not concern the duties and liabilities of third parties doing business with corporate officers or directors and merely recites that officers and directors can engage in some independent but similar business enterprises under certain conditions. S ee id. at 47.
 
 
 13
 Under Virginia law, one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance. Patteson v. Horsley, 70 Va. (29 Gratt.) 263, 270-71, 273, 276 (1877).[5] The Virginia Supreme Court expressly held in Patteson that constructive notice of a breach of fiduciary duty suffices to hold a third party liable for participation in the breach. Id. at 276; see also W.L. Chase & Co., Inc. v. Norfolk National Bank of Commerce & Trusts, 145 S.E. 725, 726, 730 (Va.1928).
 
 
 14
 Tysons sufficiently alleges that Horvath breached his fiduciary duty by usurping a corporate opportunity from Tysons. In particular, Tysons' amended complaint asserts that Horvath obtained stock in reinsurance companies, which were engaged in a business similar to Tysons, and that Tysons could have profited either if Horvath did not possess the stock or if Tysons had owned the stock. Amended Complaint paragraphs 38-44. As a director of Tysons, Horvath had a duty to notify Tysons of this opportunity and to receive its consent before acquiring the stock.
 
 
 15
 The keystone of Tysons' aiding and abetting claim against the defendants is that they should have known that Horvath was breaching his fiduciary duty to Tysons based upon the face of the transactions they were conducting with him. See Amended Complaint p 50. Although Tysons also alleges that the defendants had actual knowledge of Horvath's breach, the amended complaint states only mere conclusions unsupported by alleged facts. However, the amended complaint does allege that "[t]he defendants had actual knowledge or constructive notice that Horvath was violating his fiduciary duty to Tysons." Id. p 78 (emphasis added).
 
 
 16
 Tysons specifically alleges that the defendants knew that Horvath owned stock in the reinsurance companies, that the opportunity to own that stock constituted a corporate opportunity of Tysons, and that Horvath had a duty to disclose those facts to Tysons and obtain appropriate corporate consent. Id. p 63. Because the defendants failed to inquire into whether Horvath had received Tysons' consent, the defendants were charged with knowledge that the stock ownership constituted a breach of Horvath's fiduciary duty. Id. p 64.
 
 
 17
 These allegations suffice to survive a motion to dismiss. Under D. Humphreys & Son, Inc. v. Broughton, 141 S.E. 764, 766 (Va.1928), a corporate officer or director in Virginia has no apparent authority to use corporate assets for his personal benefit. Third parties dealing with an officer who is obviously using corporate assets for his own benefit, therefore, cannot assume that the officer has authority to do so. Id. Furthermore, when a corporate officer deals with corporate funds as if they were his own, it should "awaken distrust" in the minds of third parties. W.L. Chase & Co. Inc. v. Norfolk National Bank of Commerce & Trusts, 145 S.E. 725, 730 (Va.1928). Although Tysons' corporate opportunity was less tangible than corporate funds or assets, Tysons has alleged enough facts that, if proven, would suggest that the defendants should have known that Horvath's ownership of the stock in the reinsurance companies would divert commissions away from Tysons.
 
 
 18
 The district court also dismissed Tysons' aiding and abetting claim because, even if such a duty existed, Tysons failed to allege that the "defendants either actively and forcibly aided and participated in the injury, or that they were present at the injury,'aiding, encouraging and inciting the same.' " Memorandum Order 4, Mar. 11, 1993 (quoting Daingerfield v. Thompson, 33 Gratt. (74 Va.) 136, 148 (1880)). The district court's reliance on Daingerfield, a civil tort case concerning proper jury instructions for aiding and abetting, however, is misplaced in light of Patteson. Furthermore, Tysons alleged that Horvath could not have profited but for his ownership of the reinsurance stock, the fact that Globe and Virginia Surety followed his instructions by reinsuring Tysons' policies with Commonwealth Life and Common wealth Casualty, and Globe's two-tiered commission scheme. Thus, Tysons has alleged sufficient participation by the defendants in Horvath's breach of fiduciary duty.
 
 
 19
 Finally, the district court dismissed the aiding and abetting claim, as well as the conspiracy claim, because "[c]onclusory allegations like those in the amended complaint are not enough to support either of plaintiff's claims." Memorandum Order 4, Mar. 11, 1993 (citing Saval v. B.L. Ltd., 710 F.2d 1027 (4th Cir.1983) (involving a dismissal based upon Rule 9(b))). Tysons argues that its pleadings were sufficiently particular or, in the alternative, that Rule 9(b) does not apply to claims of constructive fraud. Because we rule that the allegations in Tysons' amended complaint suffice to make out a claim for aiding and abetting under Rule 9(b), we need not determine which standard applies. Given Tysons' allegations in its amended complaint, the district court should not have dismissed the aiding and abetting a breach of fiduciary duty claim.
 
 B.
 
 20
 The district court dismissed Tysons' conspiracy to breach a fiduciary duty claim for essentially the same reasons it dismissed the aiding and abetting claim--an absence of a duty upon the defendants to inquire whether Horvath had received Tysons' consent, and Tysons' failure to allege facts with sufficient particularity under Rule 9(b). As discussed above, however, we find that Virginia law does impose a duty to inquire upon the defendants. See Patteson, 70 Va. (29 Gratt.) at 270-71, 273, 276. Because Tysons adequately alleges that the defendants individually aided and abetted Horvath in his breach of fiduciary duty, we must determine whether the allegations suffice to allege that the defendants conspired with each other to do so.
 
 
 21
 The Supreme Court of Virginia has defined a civil conspiracy as "a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." Hechler Chevrolet, Inc., v. General Motors Corp., 37 S.E.2d 744, 746 (Va.1985) (citations omitted). The nature of a conspiracy claim often requires a court to infer a conspiracy from indirect evidence in order to determine whether alleged joint tortfea sors are pursuing the same goal and are in contact with one another. See Halberstam v. Welch, 705 F.2d 472, 481 (D.C.Cir.1983). A conspiracy claim does not require an express agreement; proof of a tacit understanding suffices. Id. at 477.
 
 
 22
 Tysons alleges that the defendants entered into either an express or tacit agreement with Horvath and each other to help him breach his fiduciary duty to Tysons. The amended complaint points to complementary and interlocking actions by the defendants which together suggest a conspiratorial scheme. Tysons alleges that Horvath instructed Globe and Virginia Surety to obtain reinsurance from Commonwealth Life and Commonwealth Casualty, Amended Complaint p 86(a); that Commonwealth Casualty issued participating stock to Horvath, id. p 86(b); and that Globe's two-tiered commission structure shifted commissions Tysons should have received to Horvath via his ownership of participating stock, id. atparagraphs 52(f), 86(d).
 
 
 23
 We conclude that because Tysons' allegations, if proven, would support an inference that the conspiracy existed, the district court should not have dismissed the claim.
 
 C.
 
 24
 The district court ruled, without any discussion, that Tysons did not adequately allege any facts to support a cause of action for breach of either an express or implied contract. Tysons, however, clearly alleges that it had an agreement with Globe to act as its agent to sell credit life and disability insurance, and that the agreement entitled Tysons to commissions. Amended Complaint p 16. The amended complaint further describes how Globe "warehoused" part of the commissions that should have been paid to Tysons and eventually paid the excess funds directly to Horvath. Id. paragraphs 67-73, 91-93. Although Tysons does not allege specific facts regarding its entitlement to the warehoused commissions under either an express or implied-in-fact agreement, Tysons allegations suffice to survive a motion to dismiss its breach of contract claim.
 
 D.
 
 25
 The district court dismissed Tysons' conversion claim against Globe and Ryan simply because it arose from averments of fraud that depended on the sufficient pleadings of Counts I and II. Because we hold that the district court improperly dismissed these claims, we hold that Count IV also should have survived the defendants' motion to dismiss.
 
 III.
 
 26
 Because we hold that Tysons' claims should proceed on remand, we must address the defendants' issues on cross-appeal involving the statute of limitations and res judicata defenses that they raised against Tysons' first federal complaint.
 
 A.
 
 27
 When the district court dismissed Tysons' initial federal complaint, it also ruled that the defendants' statute of limitations defense required a factual determination, which could not be decided upon a motion to dismiss. Specifically, because Counts I, II, and IV alleged fraudulent conduct, when the causes of action accrued depended upon when Tysons discovered or, by the exercise of due diligence, should have discovered the fraudulent conduct. See Va.Code Ann. Sec. 8.01-249.1. The defendants argue that the "discovery rule" should not apply to Tysons' claims merely because they require proving elements of fraud and that, even if the rule applies, Tysons' directors were chargeable with knowledge of Horvath's actions as a matter of law.
 
 
 28
 We conclude that the Virginia discovery rule does apply to the claims arising from Horvath's breach of fiduciary duty. The Virginia Supreme Court has held that a breach of fiduciary duty constitutes constructive fraud, e.g., Kitchen v. Throckmorton, 286 S.E.2d 673, 676, 679 (Va.1982), and that the discovery rule applies to constructive fraud as well as actual fraud, Excalibur Insurance Co. v. Speller, 257 S.E.2d 848, 850 (Va.1979). We also conclude that "[i]ssues of when a fraud should reasonably have been discovered, as with most issues of reasonableness, are typically best left to the jury." Pennsylvania Life Insurance Co. v. Bumbrey, 665 F.Supp. 1190, 1202 (E.D. Va.1987).
 
 B.
 
 29
 The defendants also challenge the district court's ruling that the res judicata doctrine did not bar Tysons' claims. The district court held that because the state court had overruled demurrers to counts alleging fraud and diversion of assets, and because Tysons elected to suffer a non-suit, no dispositive orders were entered by the state court regarding the claims involving fraud. Thus, Tysons could raise its aiding and abetting and conspiracy to breach a fiduciary duty claims in federal court. We agree with the district court that " '[t]he only effect of a non-suit is to put an end to the pending litigation without prejudice to either party.' " Memorandum Order 2, Jan. 26, 1993 (quoting Alderman v. Chrysler Corp., 480 F.Supp. 600, 603 (E.D. Va.1979)).
 
 
 30
 The defendants urge this Court to consider the effect of the state court's sustaining of certain demurrers without leave to amend and the state court's instructions from the bench regarding which causes of action remained in the case. As Tysons points out, however, the state court denied defendants' motion to vacate the order of nonsuit and their request for an order identifying the counts to which demurrers had been sustained without leave to amend and those which could have been amended. Therefore, the district court properly denied the defendants' res judicata defense.
 
 IV.
 
 31
 For the reasons stated, we reverse the district court's dismissal of all four counts of Tysons' amended complaint, affirm the district court's rulings on the statute of limitations and res judicata issues, and remand for Tysons to proceed with its claims.
 
 
 32
 REVERSED AND REMANDED IN PART, AFFIRMED IN PART.
 
 
 
 [1]
 Horvath is not a party because he is bankrupt and the terms of his confirmed plan of reorganization preclude his being joined as a defendant in this action
 
 
 [2]
 Reinsurance is a transaction by which a primary insurance company transfers to another entity all or part of the risk associated with insurance policies it has issued in order to relieve itself of the liability transferred
 
 
 [3]
 In the introduction to its amended complaint, Tysons states that it is suing only Globe for breach of contract, but inp 94 it requests judgment against both Globe and Ryan despite no allegations against Ryan in paragraphs 90-93 (Count III, Breach of Contract). In its original federal complaint, Tysons had included specific allegations against Ryan in paragraphs 72-80 of the Breach of Contract section. Although the reference to Ryan in p 94 of the amended complaint may have been an error of revision, this should be clarified on remand
 
 
 [4]
 The court did not address the breach of contract claim in its rulings on these defenses. The district court limited its res judicata discussion to claims involving fraud and expressly omitted Count III in its statute of limitations ruling. Therefore, this Court will not rule on issues that the district court has not decided
 
 
 [5]
 Patteson involved a breach by a trustee, but corporate officers and directors in Virginia are subject to the same fiduciary duty of loyalty as trustees. Gianotti v. Hamway, 387 S.E.2d 725, 731 (Va.1990)