**BANDAG INCORPORATED**

v.

Andrew J. SALIGA and Alice G. Saliga
d/b/a Andy's Tire & Battery Service.

Civ. No. 20879.

United States District Court,
D. Maryland.

June 25, 1970.

Benjamin C. Howard, Baltimore, Md., and George T. Mobille, William T. Bullinger and Cushman, Darby & Cushman, Washington, D. C., for plaintiff.

William F. Mosner, and Power & Mosner, Towson, Md., and Harry I. Stegmaier, Cumberland, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

■ Bandag Incorporated (Bandag), an Iowa corporation with its principal place of business in that State, seeks herein declaratory relief, naming as defendants Andrew J. Saliga and Alice G. Saliga, citizens of Maryland, doing business as "Andy's Tire & Battery Service" (the Saligas). Bandag asserts jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship); under 28 U.S.C. § 1338 and 15 U.S.C. § 1121 (trademark); and under 28 U.S.C. §§ 2201 and 2202 (the federal Declaratory Judgment Act), alleging that the matter in controversy exceeds Ten Thousand Dollars ($10,000), exclusive of interest and costs. The Sali-

gas, as defendants, ask that this proceeding be stayed, pending a final determination of a state court case commenced prior to this federal action, by the Saligas as plaintiffs, against Bandag and another defendant, one William Murphy, a Maryland citizen. Bandag's position that Murphy cannot be joined as a party herein because such joinder would destroy diversity of citizenship would appear to be important since diversity of citizenship is the key to, if not the sole basis for, the existence of this Court's jurisdiction in this case. For while Bandag does allege that federally registered rights in the trademark and tradename "Bandag" are involved, any dispute among Bandag, the Saligas and Murphy concerning those rights will seemingly be automatically resolved by the determination of the contract dispute among them. It is noted that Bandag has made no effort to join Murphy as a party herein upon the theory that there is, independent of diversity, a federal trademark-tradename basis for jurisdiction over Murphy and his involvement in any controversy with Bandag and/or the Saligas. Further, insofar as any jurisdictional basis other than diversity is concerned, the federal Declaratory Judgment Act does not in and of itself provide independent or additional federal jurisdiction. Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 323–324 (4th Cir. 1937), citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, reh. denied, 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937); Lear Siegler, Inc. v. Adkins, 330 F.2d 595, 599 (9th Cir. 1964). The introductory words of section 2201—"In a case of actual controversy *within its jurisdiction*" (emphasis supplied)—are themselves clear authority for that conclusion.

A recital of the developments to date in the aforementioned state court case and in this case places in focus the issue herein posed. On February 26, 1969, the Saligas (defendants herein) filed a civil action in the Circuit Court for Allegany County, Maryland, naming as defendants therein Bandag (plaintiff herein) and also William Murphy, a citizen of Maryland, doing business as "Wilt's Tire Service." It appears undisputed that Bandag manufactures and sells equipment and materials for use in connection with a patented method of retreading tires, known as the "Bandag Method," and that Bandag franchises the rights to utilize that method to certain dealers in this country and abroad. The Saligas in their state court suit allege that they are the holders of one of those franchises under an "Exclusive System Franchise Agreement" entered into on February 1, 1968, between Bandag and the Saligas, pursuant to which the Saligas claim the exclusive right to use the "Bandag Method" and tradename in Allegany County, Maryland; and that Bandag has breached that agreement by selling equipment and materials to Murphy, with the knowledge and intent that Murphy would utilize the "Bandag Method" in Allegany County. The Saligas, in their Allegany County suit, seek damages from, and injunctive relief against, both Bandag and Murphy.

On June 19, 1969, Bandag filed the within suit, seeking declaratory relief, and also payment for supplies allegedly furnished by it to the Saligas. On June 20, 1969, Bandag appeared specially in the Allegany County case and moved that those proceedings be stayed pending determination of the within federal suit. On August 26, 1969, that motion was denied by the state court, after a hearing, the Court stating, *inter alia*:

> It is apparent that the proceeding in Allegany County was filed some four (4) months prior to the Federal Court proceeding and there is not a substantial identity as to parties and issues so that one trial will effectively dispose of the other.

On September 25, 1969, both Bandag and Murphy filed answers and counterclaims in the state proceedings, framing, by way of defense, essentially the same factual issues whose existence is asserted by Bandag in this case, namely, that even if there is in force and effect an

"Exclusive System Franchise Agreement" between Bandag and the Saligas, the terms of that agreement which purport to give the Saligas "exclusive rights" to Allegany County were included by mistake; that Bandag never intended to give such rights; and that the Saligas knew or should have known both of the mistake and of Bandag's intentions. Bandag asks this Court to construe the aforesaid contract between the Saligas and Bandag as Bandag contends it should be construed. In addition, both herein and by way of counterclaim in the state case, Bandag seeks monetary damages for alleged failure of the Saligas to pay Bandag for certain materials supplied by Bandag to the Saligas.

In Landis v. North American Co., 299 U.S. 248, at 254–255, 57 S.Ct. 163, at 166, 81 L.Ed. 153 at 158–159 (1936), Mr. Justice Cardozo wrote:

> Viewing the problem as one of power, and of power only, we find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical. * * * [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. * * * True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power. There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger. * * * Such a formula, as we view it, is too mechanical and narrow. * * * All the cases advancing it could have been adquately disposed of on the ground that discretion was abused by a stay of indefinite duration in the absence of a pressing need. If they stand for more than this, we are unwilling to accept them. Occasions may arise when it would be "a scandal to the administration of justice" in the phrase of Jessel, M.R. (Amos v. Chadwick, L.R. 9 Ch.Div. 459, 462), if power to coordinate the business of the court efficiently and sensibly were lacking altogether. [Citations omitted].

■■ *Landis* involved a stay sought in one federal court because of a proceeding filed almost simultaneously in another federal court.[1] But in Amdur v. Li-

---

1. In *Landis*, several holding companies, alleging that the Public Utility Holding Company Act of 1935 was unconstitutional, sought in the District Court for the District of Columbia to enjoin enforcement against them by the Government. Responding, the Government requested a stay of that action pending the outcome of an enforcement proceeding previously instituted by the Government under the Act against other holding companies, in the Southern District of New York, in which the constitutionality of the statute had been brought directly into issue by cross-bill and answer. It is to be noted that the plaintiffs in the District of Columbia action were not parties to the New York proceeding. In that context, Mr. Justice Cardozo discussed the circumstances under which a litigant in one cause may be compelled "to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis, supra* at 255, 57 S.Ct. at 166.

zars, 372 F.2d 103 (4th Cir. 1967), Judge Sobeloff, quoting in part some of the passage from *Landis* set forth above, wrote (at 106) that that rationale "is equally applicable where the prior proceedings are in the state court" and noted that "[t]he Second Circuit has repeatedly affirmed the discretionary character of a federal district court's power to stay diversity action during the pendency of *state* court proceedings." [2] (Emphasis in original).

In this case, Bandag, one of two defendants in the prior instituted state court proceeding, in which the parties to the within suit have apparently presented every substantial issue of law and fact herein posed, cannot validly complain that the grant of the stay sought herein by the Saligas will compel Bandag, in the words of Mr. Justice Cardozo in *Landis* (299 U.S. at 255, 57 S.Ct. at 166), "to wait upon the outcome of a controversy to which he is a stranger." Nor will Bandag be in any way procedurally prejudiced by the stay the Saligas seek herein. The Maryland discovery opportunities are substantially the same as those provided by the Federal Rules of Civil Procedure; the trial calendar in Allegany County will seemingly permit a prompt trial of the case instituted by the Saligas; the forum would seem as convenient to all concerned as that of this Court; and the *Erie* doctrine insures that the same substantive law doctrines will apply, whether the controversy is decided in this Court or a Maryland court. In addition, whether or not Murphy is or is not an indispensable party herein under Rule 19 of the Federal Rules of Civil Procedure, the adjudication of his rights at the same time as those of Bandag and the Saligas are determined—and the construction of both the Bandag-Saligas and the Bandag-Murphy contracts in the same proceeding—are clearly desirable.

In summary, it would appear that an appropriate basis exists in this case for this Court, acting under the *Landis* principles, to grant the within stay. But this Court need not act solely within that context because additional considerations, specifically applicable herein, are present in this case—and in any case—

2. The following quotations are also pertinent:

It has been firmly established that the pendency of an action is personam in a state court does not prevent a party from bringing, in federal courts having jurisdiction, actions against the same defendants, based on the same issues as are involved in the state court action, and that it is discretionary with the court in such case, whether or not to stay the action brought in this court pending the trial and determination of the issues in the state court. [Ratner v. Paramount Pictures, 46 F.Supp. 339, 340 (S.D.N.Y.1942)].

It is settled that in a proper case an action in a Federal court may be stayed, pending the outcome of a prior action in a state court between the same parties and involving the same matters. [Annotation, Stay Pending Outcome of Another Action, 81 L.Ed. 161, 173 (1937), following the opinion in *Landis*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153.]

See also the following statement in Note, Stays of Federal Proceedings in Deference to Concurrently Pending State Court Suits, 60 Colum.L.Rev. 684, 686 (1960):

Although it was at one time thought that the federal courts were devoid of any discretionary power to stay their proceedings in deference to concurrently pending state court actions, the lower federal courts have, in recent years, stayed cases when a prior action involving similar parties and issues was pending in a state court. In doing so, however, they have recognized that a stay, although not formally a renunciation of jurisdiction, generally sets the stage for a later dismissal on a plea of res judicata, or at least allows some issues to be determined by the state rather than the federal court. For this reason at least one circuit continues to adhere to the rule that the granting of a stay in the circumstances here discussed is beyond the power of a federal court. [Citations of two Fifth Circuit opinions are omitted]. The Supreme Court has not yet passed directly upon the point except in cases arising under the admiralty jurisdiction, and cases in which a declaratory judgment is sought. [Footnotes omitted].

With regard to declaratory judgment cases, see the discussion *infra*.

in which declaratory relief under 28 U.S.C. § 2201 is sought. In such a proceeding, the essential question is whether a declaratory judgment will serve a useful purpose within generally recognized principles of equity. Hillsborough Township, Somerset County, N. J. v. Cromwell, 326 U.S. 620, 623, 66 S.Ct. 445, 90 L.Ed. 358 (1947); and Great Lakes Dredge and Dock Co. v. Huffman, 319 U.S. 293 at 300, 63 S.Ct. 1070 at 1074, 87 L.Ed. 1407 (1943). In the latter, Mr. Chief Justice Stone wrote:

> * * * The Declaratory Judgments Act was not devised to deprive courts of their equity powers or of their freedom to withhold relief upon established equitable principles. It only provided a new form of procedure for the adjudication of rights in conformity to those principles. * * *

Earlier, in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, at 495, 62 S.Ct. 1173, at 1176, 86 L.Ed. 1620 reh. denied, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562 (1942), Mr. Justice Frankfurter stated:

> * * * Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a *state* court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided. [Emphasis supplied.]
>
> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court

proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

Those tests teach, *inter alia*, that declaratory relief "should not be accorded * * * to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Aetna Casualty & Surety Co. v. Quarles 92 F.2d *supra* at 325. To the same effect, *see generally, inter alia*, Lear Siegler, Inc. v. Adkins, 330 F.2d *supra* at 599–602; Indemnity Ins. Co. v. Schriefer, 142 F.2d 851 (4th Cir. 1944); Maryland Cas. Co. v. Boyle Const. Co., 123 F.2d 558 (4th Cir. 1941); Sears, Roebuck & Co. v. Buce, 197 F.Supp. 136 (M.D.Ala.1961); Borchard, Declaratory Judgments 299–302 (2d Ed. 1941).

■ In this case, Bandag seeks to have determined under the federal Declaratory Judgment Act those same contractual rights and liabilities of the Saligas and Bandag which are in issue in the Allegany Court proceeding involving Bandag, the Saligas *and* Murphy. Judicial economy, respect for a prior instituted state court proceeding, and the common sense of having Murphy's rights and liabilities determined in the same suit as those of the Saligas and Bandag, are among the affirmative reasons why this Court should refuse, at this time, to grant the relief Bandag seeks herein. Accordingly, the motion of the Saligas that this federal proceeding be stayed pending final determination of the case instituted by the Saligas against Bandag and Murphy in the Circuit Court for Allegany County is hereby granted.