**Starlett Sheffield KLINE, Plaintiff,**

v.

**NATIONSBANK OF VIRGINIA, N.A., Defendant.**

**Civ. A. No. 2:94cv810.**

United States District Court, E.D. Virginia, Norfolk Division.

May 18, 1995.

John W. Hart, Beaton & Hart, Virginia Beach, VA, for plaintiff.

Robert W. McFarland, David M. Young, McGuire, Woods, Battle & Boothe, Norfolk, VA, for defendant.

## ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the Court on Defendant's and Plaintiff's objections to the Magistrate's Report and Recommendation filed March 13, 1995.

### I. Procedural History

In this action filed August 12, 1994, Plaintiff Starlett Sheffield Kline states claims for negligence and malfeasance, breach of express trust, and breach of the duty of loyalty. Plaintiff seeks compensatory and exemplary damages relating to her claims as well as attorney's fees and costs. On September 6, 1994, Defendant Nationsbank of Virginia, N.A. ("Nationsbank") moved to dismiss the Plaintiff's complaint based on lack of subject matter jurisdiction, failure to state a claim, the statute of limitations, adverse possession, laches, waiver, ratification, and estoppel. On September 19, 1994, Plaintiff responded in opposition to Defendant's motion to dismiss. On September 22, 1994, Plaintiff filed a reply memorandum to Plaintiff's opposition brief. On October 26, 1994, the matter came before Magistrate Judge William T. Prince. By order dated October 27, 1994, the Court directed Plaintiff to file an amended complaint on or before November 9, 1994, and the Court ordered Plaintiff to submit a statement in support of the jurisdictional amount within two months of the entry of the Order.

On November 9, 1994, Plaintiff moved the Court for leave to file her amended complaint. By order dated November 22, 1994, the Court granted Plaintiff's motion to file the amended complaint. Also on November 22, 1994, the amended complaint was filed. By order dated November 23, 1994, the Court set December 9, 1994, as the filing deadline for Defendant to file a motion to dismiss. On December 9, 1994, Defendant moved to dismiss Plaintiff's amended complaint because of failure to state a claim for punitive damages and failure to plead fraud with particularity and because Plaintiff's fraud claim was barred by the statute of limitations.

This matter was again referred to a United States Magistrate Judge by order filed De-

cember 30, 1994, for report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). The referral order required the Magistrate Judge to conduct a hearing and to submit proposed recommendations for the disposition of Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed December 9, 1994.[1] Additionally, on December 28, 1994, Plaintiff filed a statement in support of the jurisdictional amount in the case. Defendant filed a response on January 10, 1995 in which Defendant disputed whether Plaintiff has demonstrated the requisite amount in controversy.

The Magistrate Judge's Report and Recommendation was filed on March 13, 1995, recommending the following:

1. Defendant's motion to stay or dismiss this action because of the pending state action should be DENIED;

2. Defendant's motion to dismiss Counts One, Two, and Three for failure to state a claim should be DENIED;

3. Defendant's motion to dismiss Plaintiff's claims for punitive damages under Counts One, Two, and Three for failure to state a claim should be GRANTED;

4. Defendant's motion to dismiss Count Four for failure to state fraud with particularity should be GRANTED;

5. Defendant's motion to dismiss any claim for pre–1987 damages under Count Three as time barred should be DENIED;

6. Defendant's motion to dismiss Counts One and Two as time barred should be DENIED;

7. Defendant's motion to dismiss Count Three on grounds of ratification should be DENIED; and

8. Defendant's motion to dismiss the entire action based on want of diversity jurisdiction, due to plaintiff's failure to meet the amount in controversy, should be DENIED.

By copy of the Report and Recommendation of the Magistrate Judge, the parties were advised of their right to file written objections. On March 27, 1995, this Court received both Defendant's Objections to Magistrate Judge's Report and Recommendation and Plaintiff's Objections to Magistrate's Findings and Recommendations. Defendant raises the following objections:

1. Nationsbank objects to the Magistrate Judge's determination that the Court should not abstain from hearing this action pending the resolution of the state proceeding.

2. Nationsbank objects to the Magistrate Judge's recommendation that Counts One through Three should not be dismissed for failure to state a claim.

3. Nationsbank objects to the Magistrate Judge's recommendation that Counts One through Three are not time barred.

4. Nationsbank objects to the Magistrate Judge's recommendation that the action should not be dismissed on grounds of laches, waiver, release, estoppel, or ratification.

5. Nationsbank objects to the Magistrate Judge's recommendation that this action not be dismissed for lack of subject matter jurisdiction.

Plaintiff objects solely to the Magistrate Judge's finding that all claims for punitive damages should be dismissed. Plaintiff also requests leave to file an amended complaint with respect to her claims for punitive damages only if the Court dismisses her punitive damages claims. On April 5, 1995, Defendant responded in opposition to Plaintiff's Objections and to Plaintiff's motion to amend. On April 10, 1995, Plaintiff filed a Response to Defendant's Objections.

## II. Discussion

If a party serves and files written objections to the Magistrate Judge's Report and Recommendation, the District Judge is required to make a *de novo* determination of those portions of the report to which objection is made, and either affirm, reject, or modify the Magistrate Judge's recommenda-

---

1. Defendant's memorandum accompanying its motion to dismiss the amended complaint specifically incorporates all arguments made in Defendant's original motion to dismiss.

tion. *See* 28 U.S.C. § 636(b)(1) (1988). After examining Defendant's and Plaintiff's objections, the Court finds that Defendant's and Plaintiff's objections repeat arguments raised in Defendant's motions to dismiss and in Plaintiff's responses to those motions to dismiss, and the Court finds *de novo* that the objections raised are without merit. Therefore, the Court, having independently examined the objections to the Magistrate Judge's Report and Recommendation and having made *de novo* findings with respect thereto, does hereby adopt and approve in full the findings and recommendations set forth in the Report and Recommendation of the United States Magistrate Judge filed March 13, 1995.[2] Accordingly, Defendant's motion to stay or dismiss this action because of the pending state action is DENIED; Defendant's motion to dismiss Counts One, Two, and Three for failure to state a claim is DENIED; Defendant's motion to dismiss Plaintiff's claims for punitive damages under Counts One, Two, and Three for failure to state a claim is GRANTED; Defendant's motion to dismiss Count Four for failure to state fraud with particularity is GRANTED; Defendant's motion to dismiss Counts One and Two as time barred should be DENIED; Defendant's motion to dismiss any claim for pre–1987 damages under Count Three as time barred is DENIED; Defendant's motion to dismiss Count Three on grounds of ratification is DENIED; and Defendant's motion to dismiss the entire action based on want of diversity jurisdiction because of Plaintiff's failure to meet the amount in controversy, is DENIED.

 In her objections, Plaintiff requested that if her claims for punitive damages are dismissed for failure to state a claim that she be allowed to amend her complaint with respect to the punitive damages claims only. Because Plaintiff has already amended her complaint one time, she requires leave of court to amend further. Fed.R.Civ.P. 15(a). "[L]eave should be freely given when justice so requires." *Id.*

The Court considers whether justice requires that Plaintiff be allowed to amend. First, Plaintiff received notice of the problems with her request for punitive damages when Defendant challenged Plaintiff's punitive damages claims in its Rebuttal Memorandum in Support of Defendant's Motion to Dismiss. Plaintiff then had an opportunity to strengthen her claims for punitive damages in her amended complaint; however, as indicated above, her allegations supporting her claim of punitive damages in her amended complaint fail to state a claim. Second, Plaintiff does not present what additional allegations she proposes to append to her complaint. Instead, Plaintiff simply states that the terms " 'outrageous and highly prejudicial' are synonymous with malice when pled in context with breach of trust actions." Pl.'s Objections to Magistrate's Findings and Recommendations at 2. Therefore, in this case, because justice does not require that Plaintiff be allowed to amend her complaint a second time with respect to her punitive damages claims, Plaintiff motion to amend is DENIED.

The Clerk shall forward a copy of this Order to all counsel of record for the parties.

It is so ORDERED.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

PRINCE, United States Magistrate Judge.

#### I. *Procedural History*

Plaintiff filed this action on August 12, 1994. Senior United States District Judge J. Calvitt Clarke, Jr., by order entered October 21, 1994, pursuant to 28 U.S.C. § 636(b)(1)(B), designated the undersigned Magistrate Judge to conduct a hearing and to submit to a Judge of the Court proposed recommendations for disposition of defendant's Motion To Dismiss filed September 6, 1994. The Court held a hearing on October 26, 1994, at which John W. Hart, Esquire appeared on behalf of plaintiff; and Robert W. McFarland, Esquire and David M. Young,

---

**2.** This Court recognizes that the Magistrate Judge's Report and Recommendation contains a thorough examination of the law behind each of the grounds stated in Defendant's motions to dismiss.

Esquire appeared on behalf of defendant. On October 27, the Court ordered plaintiff to submit a statement in support of the jurisdictional amount, and plaintiff did so on December 28, to which defendant responded on January 10, 1995. Plaintiff filed a Motion for Leave to Amend the Complaint on November 9, and the Amended Complaint was filed November 22. Defendant filed a Motion to Dismiss the Amended Complaint on December 9. On December 30, United States District Judge Robert G. Doumar designated the undersigned Magistrate Judge to submit to a Judge of the Court proposed recommendations for disposition of that motion pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned Magistrate Judge will address all of the grounds for dismissal raised by defendant in both motions.

## II. *Nature of the Case*

The following are plaintiff's primary allegations in the Amended Complaint. Mildred Farmer Sheffield died in November 1971, leaving a Last Will and Testament. Defendant's predecessor, First and Merchant's National Bank, was appointed executor of Ms. Sheffield's estate and trustee of a trust created in the will. That trust was to hold one-fourth of her estate for the benefit of Lemuel Clixtoe Sheffield for his life, with distribution of the income in defendant's discretion, with the remainder to plaintiff provided she was in excess of thirty years old at the time of Mr. Sheffield's death. Unbeknownst to defendant, the trust included one-fourth of Ms. Sheffield's one-half interest in a parcel of real property at 1900 West Washington Street, Petersburg, Virginia, a total of a one-eighth interest in the property. Since 1972, the co-owners of the property had collected rental income on the property.

Defendant learned that the trust held the property in 1992, and wrote a letter in August 1992 to Mr. Sheffield, describing the situation and suggesting that he attempt to collect the amount of income the property had earned since 1972 from the co-owners. Defendant notified plaintiff of her interest in the property in September 1993. Mr. Sheffield died in 1993, and plaintiff was in excess of thirty years old, but defendant did not deliver to plaintiff the past due amounts or the income on the property since 1972.

Plaintiff claims in Count One that defendant was negligent in failing to know that the trust held the property. In Count Two, she claims that defendant's failure to collect the income on the property plus interest from 1972 to 1993, and then distribute it to her upon Mr. Sheffield's death, was a breach of trust. Count Three claims that defendant breached its duty of loyalty to plaintiff by refusing to pursue the past due amounts upon learning of the existence of the property in 1992. Finally, Count Four alleges that defendant defrauded plaintiff by stating that defendant would begin receiving income from the property for the trust, while knowing that the co-owners would not share the income, and by failing to notify her of the money the trust was owed upon dissolution of the trust. Each of the counts asks for compensatory and punitive damages.

## III. *Discussion*

### A. *Abstention*

■ In its Response to Plaintiff's Statement in Support of Jurisdiction, defendant argues that this Court should stay or dismiss this action because of a pending proceeding in state court involving the property at issue in this case. Major J. Sheffield and Marion P. Crumpler, who allegedly have resided at the property since 1970, filed suit in Petersburg Circuit Court on December 15, 1993 against plaintiff here and Candice D. Sheffield, claiming clear title to the property by adverse possession. Defendant contends that this state suit will have major implications on the federal action, and may even be dispositive. For example, defendant states that if the state court finds that Mr. Sheffield and Ms. Crumpler did gain title to the property by adverse possession, plaintiff here would only be able to seek damages for the time period before that adverse possession, for which, according to defendant, plaintiff has not stated a cause of action. Therefore, under defendant's view, this Court should invoke the abstention doctrine and either stay or dismiss the action pending a decision in the state case.

*Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), is one of the landmark abstention cases. In that case, the Court began by stating that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. at 1244. The Court then described the three general categories when abstention is appropriate. This Court does not find, and defendant does not assert, that any of the traditional three abstention situations apply in this case. Defendant relies on a fourth principle the Supreme Court recognized in *Colorado River,* one which allows a federal court to dismiss a federal suit because of a concurrent state proceeding for "reasons of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. at 1246 (citation omitted). However, the Court noted that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," *id.* (citation omitted), and that the circumstances permitting the use of this principle "are considerably more limited than the circumstances appropriate for abstention." *Id.* The Court then set forth a number of factors federal district courts should consider in deciding whether to invoke the *Colorado River* doctrine. *See also McLaughlin v. United Virginia Bank,* 955 F.2d 930, 934–35 (4th Cir. 1992).

The Fourth Circuit recently described the *Colorado River* doctrine as "seek[ing] to conserve judicial resources and otherwise avoid duplicative litigation when litigants seek to adjudicate the same dispute in both state and federal forums." *Richmond, Fredericksburg, & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 253 (4th Cir.1993). Consequently, "[i]n assessing whether to abstain under *Colorado River,* 'the district court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.'" *Id.* at 254 (quoting *New Beckley Mining Corp. v. International Union, United Mine Workers,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 306

(1992)). "The proceedings need not be identical," *Holland v. Hay,* 840 F.Supp. 1091, 1099 (E.D.Va.1994), but the court in *New Beckley* found actions not parallel when the issues raised and remedy sought were different, stating that "some factual overlap does not dictate that proceedings are parallel[.]" 946 F.2d at 1074.

The state court action is not substantially similar to the action before this Court. To begin, the parties are not the same. While plaintiff here is a defendant in the state case, the plaintiffs in the state case are complete strangers to this action. Next, the remedies sought in the actions are not the same. Plaintiff here asks for money damages for defendant's alleged breach of trust, while the plaintiffs in the state action want to quiet the title to a piece of property. Finally, and most importantly, the issues raised are completely different. The state claim is based on the age-old principles of adverse possession, while the federal claim is a breach of trust action. The fact that the property at issue is the same is a simple "factual overlap" that does not make the two proceedings parallel.

" '[T]he *Colorado River* doctrine does not give federal courts carte blanche to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals.' " *Id.* (quoting *United States v. SCM Corp.,* 615 F.Supp. 411, 417 (D.Md.1985)). That is precisely what defendant asks for in this case, and this Court finds that because the state proceeding is not substantially similar to the instant case, the action should not be stayed or dismissed based on the *Colorado River* doctrine.

■ Defendant also alludes to a separate doctrine that gives federal courts discretion to allow state courts to decide issues of state law in their pending actions before federal courts proceed in actions involving the same issues and parties. Defendant cites *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), where the Supreme Court held that a bankruptcy court should submit to the state court determinative issues of state property law before pro-

ceeding. The Court finds that case inapposite because the *Thompson* Court allowed the referral of *unsettled* questions of state property law to state courts in order to proceed with bankruptcy administration properly. *Id.* at 483–84, 60 S.Ct. at 630–31. Defendant does not contend that Virginia's adverse possession law is unsettled. However, there are other situations in which federal courts have stayed actions to await a state court determination of pending issues.

It is well settled that it is within a federal district court's discretion to "stay proceedings when a similar case is pending in a state court." *Amdur v. Lizars,* 372 F.2d 103, 107 (4th Cir.1967); *see also Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *Bertels v. Sullivan,* 312 F.Supp. 63, 66 (E.D.Va.1970). There are many reasons behind a stay in this situation, such as noninterference with state courts and the promotion of judicial efficiency, but defendant argues mainly that the Virginia court is the proper tribunal to decide this issue of Virginia law, and that this issue is dispositive of the federal action.

The Supreme Court deferred to a state court for determination of a state law issue in *Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), but did so because the state law issue was novel and crucial to the federal action. In addition, the Supreme Court has emphasized that a district court should stay a federal action only when the parties in the state are the same as in the federal suit. *See Landis,* 299 U.S. at 254–55, 57 S.Ct. at 166 ("[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both").[1] Another factor courts consider is the importance of the issue pending before the state court in deciding the federal case. An issue fully determinative of the federal suit pending before a state court weighs heavily in favor of a stay. *See, e.g., Bertels,* 312 F.Supp. at 65.

The Court's review of Fourth Circuit cases on this issue reveals that the most important factors are the similarity of the parties and issues, the dispositive nature of the issues, and how far along the state action has proceeded. *See Amdur,* 372 F.2d at 107 ("[t]he state proceeding [on the same claim] is appreciably more advanced than the one in federal court," weighing in favor of a stay); *Miles v. Grove Mfg. Co.,* 537 F.Supp. 885, 889 (E.D.Va.1982) (a stay simply forces the same plaintiff in identical actions to choose forums, and is therefore proper); *Washington v. Rothenberg,* 436 F.Supp. 699, 700 (E.D.Va. 1977) ("[s]tate court action, having the same parties, involving the same subject matter and dealing with the same property, was filed before the [federal] case," and therefore granting a stay would prevent interference); *Bandag Inc. v. Saliga,* 314 F.Supp. 432, 435 (D.Md.1970) (parties in state court "presented every substantial issue of law and fact" posed in the federal action, making a stay appropriate); *Bertels,* 312 F.Supp. at 65 (same parties and determinative issues before both courts, and the state court proceeding was much farther along, so the federal action should be stayed).

None of the above factors are present in the case before this Court. The parties are not the same as in the state case, and there is a valid concern that a stay in this action would allow strangers to this action to decide in part the rights of the parties here. There are many issues presented in the federal case and not in the state case, and the only overlap is in the title to the property. Adverse possession is not a novel issue in Virginia, and a decision on that issue is not as crucial to this action as defendant argues. Even if the state court decides that the plaintiffs in its action gained title by adverse possession, plaintiff here still has stated a claim for breach of trust, as discussed below. Finally, there is no indication that this action will interfere with the state court proceeding in any way.

---

1. At least one district court has held that a nonparty to the similar state action has no standing to move for a stay in federal court pending the state court's decision. *Levy v. Alexander,* 170 F.Supp. 439, 441 (D.C.N.Y.1959). Defendant here is not a party to the suit in Petersburg Circuit Court.

"[I]t has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment." *Meredith v. Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). If called upon to decide the state law issue of adverse possession, this Court will do so. The concerns courts have addressed in granting stays to allow state court determinations of issues are not present in this case, and therefore defendant's motion to stay or dismiss this action should be DENIED.

### B. *Failure to State a Claim*

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Martin Marietta Corp. v. International Telecomms. Satellite Org.*, 991 F.2d 94 (4th Cir.1993). The claim should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of the claims which would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *cf. Bruce v. Riddle*, 631 F.2d 272, 2273–74 (4th Cir.1980). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of "recovery is remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In ruling on a 12(b)(6) motion, the Court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).[2]

#### 1. *Counts One Through Three*

The Amended Complaint contains four counts, and defendant apparently groups the first three counts together for the purpose of this motion, stating separate grounds for dismissing the fourth claim, fraud. The Court will address each count separately.

Count One is a negligence claim for defendant's failure to know that the property was in the trust. The question here is whether, taking all the allegations in the complaint as true, plaintiff has stated the all too familiar elements of negligence—duty, breach, cause, and harm. Plaintiff alleges in the Amended Complaint how defendant came to hold the property at issue in trust for plaintiff, and at what point plaintiff was entitled to receive that property and any income from it. It is well settled that Virginia law places on trustees the duty "to use the same measure of care which a careful and prudent person would ordinarily use under like circumstances in his own personal affairs." *Kitchen v. Throckmorton*, 223 Va. 164, 286 S.E.2d 673, 676 (1982) (citing *Harris v. Citizens Bank, etc., Co.*, 172 Va. 111, 200 S.E. 652 (1939)). Plaintiff has alleged a breach of that duty—that defendant should have known of the existence of the property—and that it caused her to lose the income from the property and the interest on that income since 1972.

Defendant argues that because plaintiff admits that defendant had no actual knowledge of the existence of the property until 1992, and because defendant could not reasonably have known about the property, plaintiff has not stated a claim for negligence. Clearly the Court cannot rule on a Rule 12(b)(6) motion that, as a matter of law, defendant could not have known about the property, and therefore did not breach its duty to act prudently in managing plaintiff's trust. Defendant's motion as to Count One should be DENIED.

Count Two alleges a breach of the express trust based on defendant's "failure to collect the income from the ... property and to distribute such income along with accumulated interest to [plaintiff]. ..." Plaintiff states that defendant "had a duty to collect on behalf of Lemuel Sheffield and [plaintiff] one-

---

**2.** The Court views defendant's motion to dismiss based on Rule 12(b)(6) as referring only to the Amended Complaint, even though its first motion was filed before plaintiff filed the Amended Complaint, and will analyze it accordingly.

eighth (⅛) of the revenue produced by [the] property." The standard under this breach of trust claim is the same as in the negligence claim, and plaintiff alleges that defendant breached that standard and caused harm. Consequently, plaintiff has stated a claim in Count Two as well, and defendant's motion as to Count Two should be DENIED also for the same reasons as Count One.

█ Count Three claims that defendant breached its duty of loyalty. Plaintiff alleges that defendant, "[u]pon learning in 1992 that it had been Trustee of [the] property, ... failed to make any effort to collect past due income with respect to the real property," and that this caused her damages. Again, the Court cannot rule as a matter of law that this inaction by defendant did not breach the "fundamental duty of loyalty and good faith which a trustee owes to the beneficiaries of the trust," *Goldman v. Kaplan*, 170 F.2d 503, 505 (4th Cir.1948), or the "undivided duty to [the] beneficiary ... [not to] act[ ] contrary to the best interests of [the] original cestui que trust." *Rowland v. Kable*, 174 Va. 343, 6 S.E.2d 633, 642 (1940). Defendant's motion as to Count Three should be DENIED as well.

### 2. *Punitive Damages*

Defendant argues that plaintiff has not stated a claim for punitive damages under any of the counts.[3] In general, Virginia law does not favor punitive damages, and reserves them for only "the most egregious conduct." *Owens–Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 413 S.E.2d 630, 639 (1992). The initial question is whether punitive damages are ever recoverable in claims such as these for a breach of trust, and the Court is not aware of any Virginia case on

point. Several cases have discussed this issue in deciding if punitive damages may be recovered under ERISA, which incorporates the principles of trust law. The Fourth Circuit stated in that context that "punitive damages ... [are] generally not available in an action by a beneficiary against a trustee for breach of trust,"[4] except possibly "where malice or fraud is involved."[5] *Powell v. Chesapeake and Potomac Tel. Co.*, 780 F.2d 419, 424 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986) (citing G. Bogert & G. Bogert, The Law of Trusts and Trustees § 862 (2d ed. 1982)).

Similarly, Virginia law allows an award of punitive damages in contract cases under very limited circumstances, when the plaintiff has proven "an independent, wilful tort, beyond the mere breach of a duty imposed by contract...." *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514, 518 (Va.1983) (citing *Wright v. Everett*, 197 Va. 608, 90 S.E.2d 855 (1956), and *Goodstein v. Weinberg*, 219 Va. 105, 245 S.E.2d 140 (1978)). This Court has described those circumstances as "when the breach is occasioned by conduct of an aggravated manner or accompanied by malice, bad faith, or reckless disregard for the rights of others." *Material Handling Indus. v. Eaton Corp.*, 391 F.Supp. 977, 981 (E.D.Va.1975) (citing *Wright*, 90 S.E.2d at 860).

█ Given these indications, Virginia law apparently allows an award of punitive damages in a breach of trust claim only when the breach was particularly egregious or involved some kind of separate tortious conduct. Neither party has advised the Court of any authority to the contrary. The question is whether plaintiff's allegations, accepted as true by the Court, make out a claim for punitive damages under this standard suffi-

---

3. Clearly, punitive damages are available in fraud claims. *See, e.g., Jordan v. Sauve*, 219 Va. 448, 247 S.E.2d 739, 741 (1978). However, the fraud claim itself should be dismissed, as discussed below. Accordingly, the Court need only address the other claims for punitive damages.

4. *See also Donnkenny, Inc. v. Virginia Fin. and Ins. Services, Inc.*, 739 F.Supp. 290, 293 (W.D.Va.1990); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.*, 793 F.2d 1456, 1463–64 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d

837 and 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 627 (7th Cir. 1987).

5. *See also Leigh v. Engle*, 669 F.Supp. 1390, 1413 (N.D.Ill.1987), *aff'd*, 858 F.2d 361 (7th Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989) ("The common law of trusts generally does not allow punitive damages, and makes exceptions only in cases of extraordinary fiduciary disloyalty or malicious conduct ...").

cient to survive a Rule 12(b)(6) motion. The Court concludes that they do not. Plaintiff alleges in Count One that defendant "attempt[ed] to delegate its duties [in collecting past income due the trust] to Lemuel Sheffield ...," and that this was "outrageous and highly prejudicial" to her. In Count Two, plaintiff makes the same allegations about defendant's failure to collect income from the property. Count Three states that defendant's failure to "pursue the monies due from the property" was also "outrageous and highly prejudicial." These allegations may describe negligence and breaches of fiduciary duties, as discussed above, but even in the light most favorable to plaintiff, they do not describe a separate, malicious, willful tort. Plaintiff admits that defendant did not even know of the existence of the property until 1992, so failing to collect the income on it before then was hardly malicious. Subsequently, while defendant's failure to collect current income and attempt to have Mr. Sheffield collect past due income may have harmed plaintiff, there are no factual allegations that indicate that defendant acted willfully or maliciously to do so. This is not the type of egregious conduct for which punitive damages should be awarded. Therefore, defendant's motion to dismiss plaintiff's claims for punitive damages in Counts One, Two, and Three should be GRANTED, and plaintiff's claims for punitive damages should be DISMISSED.

## C. *Fraud Pleading*

Count Four alleges fraud, and defendant contends that plaintiff has not stated that claim sufficiently under Fed.R.Civ.P. 9(b). The Court agrees.

■ Under Rule 9(b) and Virginia law, a fraud complaint must allege with particularity a false representation by defendant of a material fact with the intent to mislead, and that plaintiff reasonably relied on the representation to her detriment. *See Sneed v. American Bank Stationary Co.*, 764 F.Supp. 65, 67–68 (W.D.Va.1991) (citing, among other authority, *Winn v. Aleda Constr. Co.*, 227 Va.

304, 315 S.E.2d 193, 195 (1984); *Jefferson Standard Life Ins. Co. v. Hedrick*, 181 Va. 824, 27 S.E.2d 198, 202 (1943)). The Court must balance that rule with the relaxed Rule 8(a)(2) "short and plain statement requirement," and decide "whether, given the nature and facts of the case and circumstances of the parties, the pleading in question is sufficiently particular" to give defendant notice. *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 866–67 (E.D.Va. 1980).

■ "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pleaded with particularity." *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir.1987) (citation omitted);[6] *see also Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990). Plaintiff argues that reliance is a condition of mind, which, under Rule 9(b), may be averred generally. " 'Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how....' " *Dubowski v. Dominion Bankshares Corp.*, 763 F.Supp. 169, 172 (W.D.Va. 1991) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)).

Plaintiff's only mention of reliance in the amended complaint is that she "relied upon the representations of [defendant]." She does not expand on the circumstances. While this may satisfy the Rule 8(a)(2) requirement, a finding that it is a sufficiently particular pleading of an essential element of fraud would render Rule 9(b) meaningless. That one allegation gives defendant no notice of how plaintiff relied on the statements, much less if that reliance was reasonable. Plaintiff alleges that defendant, upon learning of the existence of the property, sent a letter on August 11, 1992 to Lemuel Sheffield, stating that defendant would begin receiving income from the property in trust on his behalf. She alleges that this statement was false and intended by defendant to mis-

---

**6.** The Amended Complaint before the Court contains an even less particular allegation of reliance than the one in *Learning Works,* which at least contained an allegation that the plaintiff ceased its business in reliance on the statements. Here plaintiff merely states that she relied.

**1296**

lead. However, there are no facts alleged at all about how she relied on that fraudulent statement. She does not allege that she read the letter at that time, or that she knew about the property until she received a deed from defendant on September 15, 1993, or, most importantly, that she did or did not do something because of that statement.[7] Plaintiff apparently is seeking the same damages for negligence, breach of trust, and breach of loyalty under a fraud theory. However, alleging that defendant did not take the proper action concerning her trust property, after discovering its existence, and caused her damages does not meet the requirement of alleging with specificity how she reasonably relied on a particular, intentionally false statement to her detriment.

Accordingly, defendant's motion to dismiss Count Four should be GRANTED, and Count Four should be DISMISSED for failing to allege fraud with particularity under Rule 9(b).[8]

### D. Statutes of Limitations

■ Defendant presents two separate statute of limitations arguments in moving for dismissal of certain parts of plaintiff's claim. Defendant's first argument deals with Count Three, where plaintiff asks for damages for defendant's failure to pursue the

income the property had earned since 1972 immediately upon learning of the property's existence in 1992. Defendant states that if it had brought suit against those who had possessed the land since 1972, Lemuel Sheffield's siblings, it would have been barred by the statute of limitations from collecting any rental income from before 1987, five years before the suit, and asks that Count Three be so limited.[9] Defendant contends that Virginia's five year statute of limitations for injury to property, Va.Code Ann. § 8.01–243(B) (Michie 1992), would have applied to that hypothetical action.

The Court disagrees. Neither party asserts what type of action defendant was responsible for bringing in 1992. Had defendant chosen to sue Mr. Sheffield's siblings in 1992, the Court has determined that NationsBank most likely would have brought a suit for accounting in equity under Va.Code Ann. § 8.01–31 (Michie 1992). The statute states that "an accounting in equity may be had ... by one joint tenant, tenant in common, or coparcener for receiving more than comes to his just share or proportion...." *Id.* An "accounting" is "a rendition of a judgment for the balance ascertained to be due. The term may include payment of the amount due."

---

7. In addition, there are no factual allegations as to her reliance on defendant's failure to tell her about the money owed to the trust upon dissolution of the trust. At any rate, this allegation is confusing. Plaintiff alleges that defendant sent her a deed confirming her interest in the property on September 15, 1993, and that Mr. Sheffield died in December 1993. The Court finds it difficult to understand how defendant's cover-up of the existence of the land, as alleged in Count Four, could have harmed plaintiff, given that she already knew about the property.

8. The Court does not agree with defendant's contention that the fraud claim should be dismissed because of the applicable statute of limitations, which is two years from the time the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered" by plaintiff. Va.Code Ann. § 8.01–243(A) and 249(1) (Michie 1992 and Supp.1994). The letter containing the statement at issue was dated August 11, 1992, exactly two years and one day before plaintiff filed this action, and addressed to Lemuel Sheffield, a non-party. To bar the claim because of the statute of limitations, the Court would have to find as a matter of law that, with the exercise of due diligence, plaintiff should have discovered the existence of the land and the

statement defendant made, both within one day after the letter containing that information, and addressed to someone else, was dated. This is clearly an issue of fact, and the fraud claim should not be dismissed under this theory. *See Tyson's Toyota, Inc. v. Globe Life Ins. Co.*, 45 F.3d 428 (4th Cir.1994) (" '[i]ssues of when a fraud should reasonably have been discovered, as with most issues of reasonableness, are typically best left to the jury' ") (quoting *Pennsylvania Life Ins. Co. v. Bumbrey*, 665 F.Supp. 1190, 1202 (E.D.Va.1987)).

9. Defendant does not expressly limit this ground to Count Three, but it is not applicable to Counts One, Two, and Four. Count Three is the only claim based on a suit defendant should have brought against the possessors of the land in 1992. The damages alleged in Counts One and Two would not be limited by a statute of limitations on that hypothetical claim. In addition, defendant originally stated its argument as one of adverse possession of the rental income. The argument is better phrased as one of statute of limitations, as defendant states in its reply memorandum.

Black's Law Dictionary 19 (6th ed. 1990). Because this would have been a suit in equity, the five year statute of limitations would not have applied. The doctrine of laches would have governed, and the imaginary defendants in that suit would have had the burden of showing "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to [them]." *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust,* 243 Va. 53, 413 S.E.2d 599, 602 (1992) (citation omitted). NationsBank would have been allowed to argue that its ignorance of the property's existence was not the result of negligence, which, if successful, would have precluded laches from operating to limit the claim. *See O'Neill v. Cole,* 194 Va. 50, 72 S.E.2d 382, 387 (1952). In sum, the Court cannot rule as a matter of law, based on the submissions before the Court, that laches would have barred a 1992 recovery of all past due rental income for the trust, had defendant chosen to bring such a suit. Accordingly, defendant's motion to dismiss the claim for pre–1987 damages in Count Three should be DENIED.

Defendant's second argument deals with the statute of limitations for Counts One and Two, the claims that fault defendant for its pre–1992 actions and inactions, before discovering the property. Defendant argues in essence that plaintiff is actually suing defendant in its capacity as executor of Mildred Sheffield's estate, and not as trustee of the trust created in Ms. Sheffield's will. While defendant may believe that plaintiff's claims against it as trustee are meritless, she has stated a claim in both counts, as discussed above, and they are against defendant as trustee. Count One clearly states that "[t]he failure of NationsBank ... to know that it owned the above referenced property *as Trustee* ... amounts to malfeasance and gross negligence" (emphasis added). Count Two is entitled "Breach of Express Trust," and states that "NationsBank's failure to collect the income from the above referenced

property and to distribute such income along with any accumulated interest to [plaintiff] ... is an express breach of the Trust established by the Last Will and Testament of Mildred Farmer Sheffield." There can be no doubt that defendant's role as trustee, and not executor, is at issue in this case. The question is whether the applicable statute of limitations bars these claims.

■ There is no express statute of limitations for actions by a fiduciary, against a trustee, for breach of trust. As defendant contends, courts in this district have held that suits for breach of fiduciary duty and accompanying negligence are governed by Virginia's one year catch-all statute of limitations, Va.Code Ann. § 8.01–248 (Michie 1992). *See Resolution Trust Corp. v. Walde,* 856 F.Supp. 281, 285 (E.D.Va.1994) (citing, among other authority, *FDIC v. Cocke,* 7 F.3d 396, 401–02 (4th Cir.1993); *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n,* 830 F.2d 522, 527 (4th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988)); *International Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.,* 838 F.2d 124, 128 (4th Cir.1988); *see also In re Southern Int'l Co.,* 165 B.R. 815, 824 (Bankr. E.D.Va.1994) (applying the catch-all statute to a claim against a bankruptcy trustee for breach of fiduciary duty).

Defendant states that this action accrued on August 11, 1992, when defendant sent the letter to Lemuel Sheffield, informing him (and as defendant seems to presume, plaintiff) of the property. "It is well settled that so long as there has been no denial or repudiation of an express and continuing trust, ... neither the statute of limitations nor laches will constitute a bar to an account or other proper relief to which the [beneficiary] is entitled." *Broaddus v. Gresham,* 181 Va. 725, 26 S.E.2d 33, 36 (1943) (citations omitted). Therefore, the one year statute of limitations did not begin to run until December 1993, when Mr. Sheffield died [10] and defendant repudiated by failing to deliver to

---

10. Plaintiff alleges in the Amended Complaint only that Mr. Sheffield died during 1993, but states in her Memorandum in Opposition to Defendant's Motion to Dismiss that his death occurred in December 1993. Even if the Court

only were to consider the general 1993 allegation, the Court could not find, as a matter of law on a Rule 12(b)(6) motion, that the statute of limitations bars these claims.

plaintiff the income from the property and the interest thereon. Plaintiff brought this action in August 1994. Accordingly, there is no time bar, and defendant's motion to dismiss Counts One and Two under this theory should be DENIED.

### E. *Ratification or Waiver*

■ Defendant contends that Count Three should be dismissed because Lemuel Sheffield, the beneficiary of the trust during his lifetime, expressly approved of defendant's inaction in 1992 in collecting the past due amounts from Mr. Sheffield's siblings, the possessors of the property. The parties agree that a beneficiary can ratify a breach of trust by the trustee, and Mr. Sheffield may have done so when he signed on the "Approved" line in defendant's letter suggesting that he, and not defendant, pursue the past due amounts from his siblings. However, the Court need not decide whether that constituted a waiver or ratification or not. Plaintiff did absolutely nothing to suggest that *she* ratified that inaction by defendant, and therefore there is no issue as to her right to bring the claim in Count Three. Accordingly, defendant's motion to dismiss Count Three on waiver grounds should be DENIED.

### F. *Amount in Controversy*

■ After the hearing, on October 27, 1994, the Court ordered plaintiff to submit a statement in support of the amount in controversy for the purpose of determining diversity jurisdiction. For the Court to have diversity jurisdiction, the amount in controversy must exceed "the sum or value of $50,000, exclusive of interest and costs...." 28 U.S.C.A. § 1332(a) (1993). The parties agree that the standard for the Court's inquiry into the amount in controversy was set out in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The Supreme Court stated that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289, 58 S.Ct. at 590.

In her Statement in Support of the Jurisdictional Amount Alleged, plaintiff details the amount of rent the property earned since 1972, and calculates that her one-eighth share of that rent would have been $44,-658.75. In its response, defendant does not dispute the amount, but instead argues that this is below $50,000, and that plaintiff may not include interest the rental income would have earned in the trust in calculating the jurisdictional amount. According to plaintiff's calculations, which again defendant does not challenge, the amount of interest her share of the rent would have earned is approximately $100,000. The issue of the inclusion of interest is therefore determinative. The question is whether the express exclusion of interest in 28 U.S.C. § 1332(a) refers to the interest the trust principal would have earned were it not for defendant's alleged breach.

Not all interest is excluded from calculating the amount in controversy. The Supreme Court first addressed this issue in the nineteenth century, in *Brown v. Webster*, 156 U.S. 328, 15 S.Ct. 377, 39 L.Ed. 440 (1895). The Court faced an ejectment claim where the applicable state law damages were the purchase price of the land plus interest. In holding that this type of interest could be included in the jurisdictional amount, the Court stated that interest was an "essential ingredient" of the principal claim, and that there is an

elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand. [Here,] the recovery sought was not the price and interest thereon, but the sum of the damage resulting from eviction. All such damage was therefore the principal demand in controversy, although interest and price and other things may have constituted some of the elements entering into the legal unit, the damage which the party was entitled to recover.... Indeed, the confusion of thought which the assertion of want of jurisdiction involves is a failure to distinguish between a principal and an accessory demand. The sum of the principal demand determines the question of jurisdiction. The accessory or the interest demand can-

not be computed for jurisdictional purposes.

*Id.* at 329, 15 S.Ct. at 377. In deciding when interest is an "essential ingredient" of the claim and can be included in the amount in controversy, courts often look to whether the interest arose solely because of delay in payment. If so, its inclusion would violate the " 'apparent purpose of excluding interest in computing the jurisdictional amount[,] to prevent plaintiff from delaying suit until the claim, with accruing interest, exceeds the statutory minimum.' " *Maryland Nat'l Bank v. Nolan,* 666 F.Supp. 797, 798 (D.Md. 1987) (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3712 (1985)); *see also Principal Mut. Life Ins. Co. v. Juntunen,* 838 F.2d 942, 943 (7th Cir.1988).

Defendant cites as analogous cases holding that, in a suit to collect on bond coupons, plaintiff can include in the amount in controversy the coupons themselves, even though they represent interest, but not interest on the coupons or the bond itself accruing after their maturity. *Edwards v. Bates County,* 163 U.S. 269, 16 S.Ct. 967, 41 L.Ed. 155 (1896); *Greene County v. Kortrecht,* 81 F. 241 (5th Cir.1897). In those cases, the coupons themselves are the integral part of the claim, but interest accruing after their maturity is the result of delay in payment.

More analogous to this case is *Brown* itself, where the law of that type of action included interest as part of damages. In a breach of trust claim such as the one before the Court, the trustee's liability includes profits lost to the estate. *Powell v. Chesapeake and Potomac Tel. Co.,* 780 F.2d 419, 424 (4th Cir.1985) (citing Restatement (Second) of Trusts § 205 (1959)). The profits plaintiff allegedly lost here include not only the rental income from the property, but also any interest that income might have earned as a result of defendant's prudent investments. Plaintiff alleges in the Amended Complaint that "she did not receive the income from the property *or the interest on such income* which has accumulated since 1972." (emphasis added). This further demonstrates that all income the trust lost as a result of defendant's alleged breach is the claim for damages, and that the rate of return the trust would have earned is an essential ingredient of that income, not an accessory demand. In addition, the calculation of that return has nothing to do with defendant's delay in paying plaintiff.

Accordingly, the lost interest on the rental income plaintiff alleges should be included in calculating the amount in controversy for the purpose of diversity jurisdiction. That brings the total amount alleged, not including the claims for punitive damages and fraud, to nearly $150,000. Even considering the other factors defendant points out, i.e., the discretionary nature of the trust while Lemuel Sheffield was the beneficiary and the deduction of taxes and expenses the property incurred since 1972, the Court cannot find as a matter of legal certainty that plaintiff cannot recover over $50,000. Defendant's motion to dismiss the action based on want of diversity jurisdiction should be DENIED.

### IV. *Recommendation*

1. Defendant's motion to stay or dismiss this action because of the pending state action should be DENIED.

2. Defendant's motion to dismiss Counts One, Two, and Three for failure to state a claim should be DENIED as well.

3. Defendant's motion to dismiss plaintiff's claims for punitive damages under Counts One, Two, and Three for failure to state a claim should be GRANTED.

4. Defendant's motion to dismiss Count Four for failing to state fraud with particularity should be GRANTED also.

5. Defendant's motion to dismiss any claim for pre–1987 damages under Count Three as time barred should be DENIED.

6. Defendant's motion to dismiss Counts One and Two as time barred should be DENIED as well.

7. Defendant's motion to dismiss Count Three on grounds of ratification should be DENIED.

8. Finally, defendant's motion to dismiss the entire action based on want of diversity jurisdiction, due to plaintiff's failure to meet the amount in controversy, should be DENIED.

**1300**

## V. *Review Procedure*

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72(b)) computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

Norfolk, Virginia

March 13, 1995.