**Leroy F. MOORE, III and Janice K. Moore, Plaintiffs,**

v.

**FLAGSTAR BANK, Federal Savings Bank (formerly known as First Security Savings Bank, FSB), Crosstate Mortgage & Investments, Inc., Trott & Trott, P.C., Mortgage Affiliated Services, Inc., and Samuel I. White, P.C., Defendants.**

**Civil Action No. 2:97CV754.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 26, 1997.

Lawrence Gene Cohen, Vandevent Black LLP, Norfolk, VA, for Plaintiffs.

Benjamin Verbin Madison, Hunton & Williams, Norfolk, VA, Henry N. Ware, Jr., Timothy Sean Feehan, Cook, Ware & Dalton, Glen Allen, VA, for Defendants.

## OPINION AND ORDER

CLARKE, District Judge.

This matter is before the Court on defendants' motions to dismiss the complaint. Defendants Flagstar Bank ("Flagstar"), Crosstate Mortgage & Investments ("Crosstate"), and Mortgage Affiliated Services, Inc. ("MAS") filed motions to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Flagstar and MAS's motions to dismiss are GRANTED. Crosstate's motion to dismiss was converted to a motion for summary judgment at the oral argument of this matter and is GRANTED.

### I.

#### A.

The following facts are derived solely from plaintiffs' Complaint, filed August 1, 1997 and amended September 11, 1997, and the exhibits attached thereto.

Plaintiffs, Leroy F. and Janice K. Moore (collectively, "the Moores") made a mortgage loan application with Crosstate on or about August 12, 1994. On October 19, 1994, the Moores closed a variable rate mortgage loan with Crosstate as the loan broker and Flagstar as the lender.[1] At closing, the Moores executed a note in favor of Flagstar and a Deed of Trust granting Flagstar a mortgage on the Moores' home. There were two sets of documents at the closing. One set marked "Copy" and another set of original documents for signing. Crosstate represented to the Moores that both sets of documents were identical. The Moores reviewed the documents marked "Copy" and then executed the original set of documents. The Moores kept the documents marked "Copy" for their personal records; the original documents were sent to Flagstar, the creditor and mortgage holder.

In fact, there were differences between the two document sets. Pertinent to this case are the differences between the Truth–In–Lending ("TIL") Disclosure form attached to each set of documents. The TIL Disclosures in the document set marked "Copy" that the Moores' reviewed and took home (the "First TIL Disclosures") contain the following disclosures:

| | |
|---|---|
| Annual Percentage Rate | 12.362% |
| Finance Charge | $603,264.47 |
| Amount Financed | $208,519.19 |
| Total of Payments | $811,783,66 |

Compl. Ex. 10. The First TIL Disclosures also provide a payment schedule. *Id.* The original document set (the "Second TIL Disclosures") contain the following disclosures:

| | |
|---|---|
| Annual Percentage Rate | 12.228% |
| Finance Charge | $601,126.97 |
| Amount Financed | $210,656.69 |
| Total of Payments | $811,783.66 |

Compl. Ex. 12. The Second TIL Disclosures likewise contain a payment schedule. *Id.* The differences in the disclosures are as follows: the annual percentage rate in the Second TIL Disclosures is .134 percent less

---

1. The documents indicate that First Security Savings Bank, FSB is the lender/creditor. Flagstar was formerly known by that name.

than the First TIL Disclosures. The finance charge is $2,137.50 less in the Second TIL Disclosures, but the amount financed is $2,137.50 more.[2]

In the fall 1995, Flagstar increased the interest rate on the Moores' mortgage. This action precipitated a dispute between the Moores and Flagstar concerning the terms of their mortgage. The Moores demanded copies of the original documents evidencing the loan. Flagstar sent the Moores copies of the original documents, which included the Second TIL Disclosures, in November 1996. At that time, the Moores discovered the differences in the First and Second TIL Disclosures.

On June 6, 1997, the Moores mailed to Flagstar a notice of rescission of the mortgage. In the letter, they allege that they were not given all material disclosures at the loan closing, and therefore, have the right to rescind the transaction within three years rather than the usual 3 days of its consummation pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635. Flagstar failed to acknowledge the notice of rescission. Around this same time, Flagstar engaged attorneys to institute foreclosure proceedings against the Moores home due to the mortgage being in default. The foreclosure sale was scheduled for June 11, 1997.

To avoid foreclosure, the Moores filed for Chapter 13 bankruptcy protection on June 10, 1997. The Chapter 13 bankruptcy was dismissed on July 10, 1997. This lawsuit was filed on August 1, 1997.

## B.

The Complaint alleges the above facts and contains seven counts.

Count 1 against Flagstar seeks rescission of the mortgage transaction based on a violation of TILA and its implementing Regulation Z ("Reg Z")[3] for failure to make material disclosures.

Count 2 against Flagstar seeks monetary damages for violation of TILA and Reg Z for failure to make material disclosures.

Count 3 against Flagstar, Crosstate, and MAS seeks monetary damages for making false representations of material disclosures under TILA and Reg Z.

Count 4 against Flagstar, Crosstate, Trott & Trott, and MAS seeks damages for common law fraud.

Count 5 against Flagstar, Trott & Trott and Samuel I. White seeks damages under TILA and Reg Z for failure to allow the Moores to rescind the mortgage transaction.

Count 6 against Flagstar and Trott & Trott seeks damages for breach of contract.

Count 7 against Flagstar and Trott & Trott seeks damages for common law conversion involving the escrow fund associated with the Moores' mortgage loan.

On September 11, 1997, the Moores filed an Amended Complaint pursuant to Fed. R.Civ.P. 15(a). The Amended Complaint does two things. It first gives a more specific citation of the court's jurisdiction with regard to the state common law counts. Second, it alleges that Crosstate regularly extends consumer credit that is subject to a finance charge and for which Crosstate receives payment.

Samuel I. White filed a motion for summary judgment requesting dismissal of the single count against him because he merely served as Flagstar's local attorney in the foreclosure proceedings. By Order entered October 3, 1997, White was dismissed from the matter pursuant to Fed.R.Civ.P. 41(a).

Trott & Trott likewise filed a motion for summary judgment on the counts in the complaint applicable to it. In support of its motion, Trott & Trott filed affidavits stating that it served as Flagstar's Michigan attorney in the foreclosure proceedings, and its

---

**2.** At the hearing on its motion to dismiss and in an October 27, 1997 letter to the Court, Flagstar's counsel attributes the difference in these disclosures to a $2,137.50 concession in the prepaid finance charge that Mr. Moore negotiated prior to closing. When there is a reduction in the amount prepaid by the consumer, the amount financed increases while the finance charge decreases by the same amount. No affidavit concerning this alleged concession was ever presented by Flagstar.

**3.** *See* 12 Code of Federal Regulations ("C.F.R.") Part 226.

only involvement in the Moore mortgage was to engage White as local Virginia counsel to initiate foreclosure that had been requested by its client Flagstar. Trott & Trott's motion for summary judgment was argued at a hearing on October 21, 1997. Prior to the issuance of this Opinion and Order, the Moores voluntarily dismissed Trott & Trott with prejudice. *See* Consent Order Dismissing Trott & Trott With Prejudice (Nov. 4, 1997).

Left in this case are defendants Flagstar, MAS, and Crosstate. All three have filed motions to dismiss the complaint and amended complaint. These motions were argued on October 21, 1997.

## II.

On a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the facts as stated in the complaint must be accepted as true. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir.1996). The Court must "construe those facts in the light most favorable to the Plaintiffs." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997). In addition to the facts on the face of the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (1990).[4] " '[U]nless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' a court should not dismiss a complaint for failure to state a claim." *Comet Enterprises Ltd. v. Air–A–Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**4.** *See Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995), *cert. granted and judgment vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996); *Payne v. McDonald's Corp.*, 957 F.Supp. 749, 753 (D.Md. 1997); *Kline v. Nationsbank of Virginia, N.A.*, 886 F.Supp. 1285, 1293 (E.D.Va.1995).

**5.** Since the transaction was closed in October 1994, the law in effect in 1994 is generally applicable. Frequently, however, amendments to TILA apply retroactively to govern this 1994 transaction. To avoid confusion as to the version

## III.

Both MAS and Crosstate seek dismissal of the TILA claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim against them. The crux of their argument is that the Moores fail to allege that they are a "creditor" as that term is defined in TILA.

### A.

Only "creditors" are liable under TILA and Reg Z. *See* 15 U.S.C.A. § 1635(a) (West 1994)[5] (discussing creditor's obligation to disclose & consumer's right to rescind); 15 U.S.C.A. § 1640(a) (West 1994) (discussing creditor's civil liability for failure to disclose); 12 C.F.R. § 226.17(a)(1) (1994) (discussing creditor's disclosure obligation). In October 1994, when this mortgage loan was consummated,[6] the term "creditor" was defined in TILA as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C.A. § 1602(f) (West 1994). Reg Z interprets TILA and furnishes the following definition of "creditor":

> A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including

of TILA and Reg Z that is being referenced, the date of the particular code and regulation section will be noted in every such citation in this opinion.

**6.** " 'Consummation' means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(13) (1994). The Moores' mortgage loan was consummated on October 19, 1994, when the loan papers were signed.

a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

12 C.F.R. § 226.2(a)(17)(i) (1994).

■ Accordingly, a creditor must be someone who regularly extends consumer credit and the person to whom the loan in question is payable.

## B.

MAS's involvement in the Moores' mortgage transaction is described in the complaint in two paragraphs. First, paragraph 30 states:

> Some of the documents used at the closing, e.g. the Deed of Trust, indicate that they were prepared by [MAS]. Some documents are "MAS Forms" and some documents may be further identified as MAS Forms "Modified for First Security Savings Bank, F.S.B. [Defendant Flagstar]." However, all documents relevant to the transaction, were prepared and completed by Victoria and/or Defendants Crosstate, MAS, and Flagstar.

Compl. ¶ 30. Second, paragraph 61 states, "Defendant MAS prepared Exhibit 14 within the Commonwealth of Virginia and/or sent Exhibit 14 into the Commonwealth of Virginia and requested settlement funds." Compl. ¶ 61. Exhibit 14 is a "Funds Request" evidencing a wire transfer of funds involved in the loan transaction. The only place on this document were MAS is mentioned is in tiny print at the bottom; it says "MAS Form DRK0009." Compl. Ex. 14.

■ Nowhere do the Moores allege that MAS is a creditor. Nor do they allege that MAS "regularly extends" credit or "is the person to whom the debt arising from the consumer transaction is initially payable." 15 U.S.C.A. § 1602(f) (West 1994); see 12 C.F.R. § 226.2(a)(17)(i) (1994). From what is alleged in the complaint and evidenced in the exhibits attached to the complaint, MAS's only involvement in the Moores' transaction was to provide form documents. Consequently, the TILA claims directed against MAS are DISMISSED.

## C.

■ Both the Moores and Crosstate have filed affidavits and supplemental materials for the Court's consideration with regard to Crosstate's motion to dismiss. The Court will therefore treat this motion as one for summary judgment under Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b).

Although judgment is made as a matter of law, the standard for entry of summary judgment is slightly different than that for granting a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Summary judgment is entered when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir.1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Crosstate claims that it is not a "creditor" and therefore owed no responsibility to the Moores under TILA or Reg Z. It points to the Brokers Agreement, attached to the complaint as exhibit 1, which states that Crosstate's role in the transaction is merely that of a mortgage broker. Compl. Ex. 1. The Brokers Agreement states that Crosstate was to "attempt to locate" a "mortgage loan" for the plaintiffs from a "lender." *Id.* Moreover, Crosstate argues, the loan was clearly initially payable to First Security Savings Bank, FSB, Flagstar's predecessor in interest, not Crosstate. *See* Compl. Ex. 5 (Deed of Trust); Compl. Ex. 6 (Adjustable Rate Note); Compl. Ex. 7 (Adjustable Rate Rider); Compl. Ex. 8 (Adjustable Rate Mortgage Disclosure Notice); and Compl. Ex. 10 (TIL Disclosure).

The Moores argue that Crosstate's own actions demonstrate that it is generally a mortgage lender, even if it did not act in that capacity in this transaction. Thus, the

Moores argue, Crosstate comes under an amendment to the definition of "creditor" found in amendments to TILA passed in 1994. The Home Ownership and Equity Protection Act of 1994 ("HOEPA"), contained in the Reigle Community Development and Regulatory Improvement Act of 1994, Pub.L. 103–325, 108 Stat. 2160, amends TILA. On their face, the relevant amendments concern high percentage rate mortgages as defined in section 1602(aa) of the current version of TILA. 15 U.S.C.A. § 1602(aa) (West 1998). HOEPA adds a sentence to the definition of "creditor" to make issuers of these high percentage rate mortgages subject to the requirements of TILA. That sentence states:

> Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12–month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter.

108 Stat. at 2191, *codified at*, 15 U.S.C.A. § 1602(f) (West 1998).

The Moores allege that Crosstate is a creditor because it fits under this amendment to the definition of "creditor." They claim that the amendment applies to all lenders making mortgage loans and not just to those making high rate mortgage loans. They allege and produce evidence to the effect that in the years preceding the Moores' loan, Crosstate originated 2 or more mortgage loans in a 12–month period, thereby making it a creditor.[7] The argument proceeds to claim that Crosstate need only have been a creditor in the past, and not specifically for this transaction because the amendment to the definition of creditor is independent of the two prong test previously addressed. *See supra* part III.A. To ensure that it alleges that Crosstate is covered under the amendment, the Moores filed an amended complaint specifically alleging that Crosstate is "a company which regularly extends consumer credit that is subject to a finance charge and for which it receives payment." Amended Compl. ¶ 13.

■ Without addressing the Moores' strained interpretation of the HOEPA amendments, this Court holds that the amendments did not apply to this transaction. Neither party recognizes that the HOEPA amendments were not in effect at the time the Moores' mortgage was consummated. HOEPA was enacted on September 23, 1994, before the October 19, 1994 closing date. However, section 156 of HOEPA states that the amendments shall apply only to mortgages "consummated on or after the date on which regulations issued under section 155 become effective." 108 Stat. at 2197. Section 155 gives the Federal Reserve System 180 days to issue regulations on the act which then only become effective pursuant to the terms of section 105(d) of TILA. *Id.* Section 105(d) of TILA states that new regulations become effective on the "October 1 which follows by at least six months the date of promulgation." 15 U.S.C.A. § 1604(d) (West 1998). Thus, the HOEPA amendments are not effective until the regulations are effective, and the regulations are not effective until at least October 1 after they are promulgated. The new regulations based on HOEPA were proposed on December 2, 1994, 59 Fed.Reg. 61832, and finalized on March 24, 1995, 60 Fed.Reg. 15463. The earliest these new regulations and the new TILA amendments became effective is October 1, 1995. Accordingly, on October 19, 1994, the date on which Crosstate's creditor status is ascertained, the only definition of "creditor" in effect was that which has been previously quoted containing only two prongs. *See supra* part III.A.

■ Crosstate's participation in the transaction must be addressed under the two prong approach used above for MAS—a creditor is someone who regularly extends consumer credit and the person to whom the loan in question is payable. *See id.* Whether Crosstate regularly extends credit is the subject of conflicting affidavits. But, the two prong test is conjunctive, and Crosstate does not satisfy the second prong. Based on the documents evidencing the mortgage transac-

---

**7.** Due to the conclusion made below concerning the effective date of the HOEPA amendments to the definition of "creditor," the Court makes no findings concerning the weight or sufficiency of the Moores' evidence.

tion at issue, Flagstar not Crosstate is the person to whom the debt arising from this transaction is payable. *See* Compl. Exs. 5, 6, 7, 8, 10. Since the debt is not payable to Crosstate, it was not a creditor subject to liability under TILA and Reg Z at the time of closing.

In sum, there is no genuine issue of material fact with regard to Crosstate's liability to the Moores under TILA and Reg Z. Crosstate is GRANTED summary judgment on those claims in the complaint alleging that it violated TILA and Reg Z.

## IV.

Next, this Court will address Flagstar's motion to dismiss the TILA and Reg Z counts. As an initial matter, however, there has been mention in the briefs and at oral argument that Flagstar's motion to dismiss should be converted to a motion for summary judgment because matters outside the complaint have been submitted to the Court for consideration. Conversion is unnecessary. With only a couple exceptions, only legal authorities, legal commentary, and actual exhibits to the complaint are before the Court. The exceptions involve the filing of other loan documents that govern the loan transaction in question. Flagstar attached a Settlement Statement for the Moores' loan to an October 27, 1997 letter to the Court and copies of other loan documents to its brief in support of its motion to dismiss. *See* Letter from Benjamin V. Madison, III to the undersigned Judge (Oct. 27, 1997); Brief in Supp. of Mot. to Dismiss (Sept. 5, 1997). The Moores attached a competing Settlement Statement to their last brief filed with the Court. *See* Plaintiffs' Br. in Opp'n to Defs. Flagstar and MAS' Supplemental Reply Br. in Supp. of Mot. to Dismiss (Nov. 21, 1997). These additional loan documents alone, however, do not necessitate conversion to summary judgment

status. They probably should have been included as exhibits to the complaint because they help describe and explain the underlying transaction. *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va. 1995) (holding that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss"). In any event, the Court does not rely on any of these new documents in its decision. Flagstar's motion to dismiss is being decided by reference solely to the complaint and its exhibits.[8]

### A.

The Court will first explain some of the requirements of TILA and Reg Z that are pertinent to Flagstar's motion to dismiss.

TILA and Reg Z are "designed to ensure that every consumer desiring credit is given meaningful information about the cost of that credit ...." Ralph C. Clontz, Jr., *Truth–in–Lending Manual* 1–7 (1996). To facilitate this purpose, TILA and Reg Z require creditors to provide consumers certain disclosures concerning the credit terms and cost of the credit that is being extended. *See* 15 U.S.C.A. § 1635(a) (West 1994) (discussing creditor's obligation to disclose). If a creditor fails to make the required disclosures, he may be subject to liability to the consumer for damages, 15 U.S.C.A. § 1640(a) (West 1994), or the consumer has a limited right to rescind the transaction, 15 U.S.C.A. § 1635(a) (West 1994).

With regard to his right to rescind, a consumer has "until midnight of the third day following consummation of the transaction, delivery of [notice of consumer's right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(1) & (3) (1994); *see* 15 U.S.C.A.

---

8. It should be noted that the Court would reach the same decision if the underlying motion to dismiss was converted to a motion for summary judgment and disposed of under Fed.R.Civ.P. 56. If that were the case, the only issue would be the parties' opportunity to file additional materials with the Court after formal notice of conversion. *See Simons v. Montgomery County Police Officers*, 762 F.2d 30, 32 (4th Cir.1985) (holding that it would have been a "unique gesture" for the

district judge to have converted the motion and allowed plaintiff time to file additional materials), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). The parties, however, would have a hard time arguing that they have not had the opportunity to file additional materials in support of their claims. This Court has taken a very liberal view of the briefing schedule in this case. *See* Orders entered Oct. 29 and Nov. 5, 1997.

§ 1635(a) (West 1994). If the notice of right to rescind or material disclosures are not delivered, the right to rescind does not expire until three years after the consummation of the transaction or the consumer sells his interest in the property. *See* 12 C.F.R. § 226.23(a)(3) (1994); 15 U.S.C.A. § 1635(f) (West 1994).

With regard to civil liability, "any creditor who fails to comply with any requirement imposed under [TILA], with respect to any person is liable to such person" for actual damages sustained by that person or twice the amount of any finance charge for the transaction. 15 U.S.C.A. § 1640(a) (West 1994). In addition, costs and attorney's fees may be imposed. *Id.*

Material disclosures are "the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule." 12 C.F.R. § 226.23(a)(3) n. 48 (1994). Thus, failure to provide any of these material disclosures to a consumer may result in rescission of the transaction and civil liability on behalf of the creditor.

### B.

The Moores' TILA and Reg Z claims involve one central issue—whether the Moores received all the required material disclosures at or before consummation of the transaction. If the complaint and exhibits show that they received all the required material disclosures, the complaint fails to state a claim under TILA and Reg Z. If not, their case may go forward.

The Moores claim that the First TIL Disclosures, those reviewed before closing, were inadequate to serve as material disclosures because they were inaccurate and did not contain all the required material disclosures. The First TIL Disclosures were inaccurate, they argue, because the finance charge and other numbers were not the same as those in the original loan documents that were executed. The Moores argue that the First TIL Disclosures did not contain all material disclosures because the mortgage broker fee was not included in the finance charge. Next, the Moores argue, when they received copies of the Second TIL Disclosures in November 1996, they were not informed again

of their right to rescind the transaction. Thus, the argument goes, they were entitled to rescind the transaction as late as June 1997.

In its motion to dismiss, Flagstar argues that the First TIL Disclosures were adequate under TILA and Reg Z. It argues that all the required material disclosures were given, even though they were not completely accurate. Moreover, Flagstar argues that it was not required to include the mortgage broker fee charged. Therefore, Flagstar maintains, the Moores' right to rescind expired three days after closing, and the disclosure of the original loan documents in November 1996 is irrelevant. Concerning the inaccuracy of the First TIL Disclosures, Flagstar claims that two tolerance provisions recently written into TILA allow it to avoid any liability. Flagstar argues that the tolerance provisions allow it to over-disclose the finance charge and still comply with the requirements of TILA and Reg Z.

### 1.

■ The first issue is whether the First TIL Disclosures contain all required material disclosures under TILA and Reg Z. As stated above, material disclosures required in 1994 include: "the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule." 12 C.F.R. § 226.23(a)(3) n. 48 (1994). The First TIL Disclosures contain each of these items. *See* Compl. Ex. 10.

■■ The Moores argue that the mortgage broker fee is a material disclosure that should have been included as part of the finance charge. This argument is incorrect. Broker fees are not included in the list of material disclosures. *See* 12 C.F.R. § 226.23(a)(3) n. 48 (1994). Nor are they generally required to be included in the finance charge amount. The Official Staff Commentary to Reg Z in 1994 clearly stated that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor are not finance charges, as long as the creditor does not retain the charges." 12 C.F.R. pt. 226, Supp. I, comment 4(a)–3 (1994). This includes, "[a] fee charged by a loan broker to a consumer,

provided the creditor does not require the use of a broker (even if the creditor knows of the loan broker's involvement or compensates the broker)." *Id.* At oral argument, Flagstar's counsel acknowledged, and there is no allegation to the contrary, that Flagstar does not require the use of a broker and did not receive the broker fees charged. Significantly, the Official Staff Commentary along with the regulations themselves are "dispositive" unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *Cades v. H & R Block, Inc.,* 43 F.3d 869, 875 (4th Cir.1994), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).[9]

### 2.

The next issue is whether the inaccuracy of the First TIL Disclosures negates their effectiveness as material disclosures such that TILA and Reg Z are violated. The Moores argue that inaccurate disclosures cannot serve as material disclosures under TILA and Reg Z. Flagstar argues that since it over disclosed the finance charge, the finance charge and other disclosures related to the finance charge are deemed accurate under tolerance provisions found in TILA and Reg Z.

The first so called tolerance provision cited by Flagstar concerns a consumer's right to rescind based on a creditor's failure to provide accurate material disclosures. It reads in part:

> [F]or the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as

the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

15 U.S.C.A. § 1635(i)(2) (West 1998). This tolerance provision applies "to all consumer credit transactions in existence or consummated on or after September 30, 1995." 15 U.S.C.A. § 1635(i)(4) (West 1998). Thus, by its clear language, it applies retroactively to the transaction at issue here.

The second tolerance provision deals with a creditor's civil liability under TILA. It states in part:

> For any consumer credit transaction that is secured by real property or a dwelling, that is subject to this subchapter, and that is consummated before September 30, 1995, a creditor or any assignee of a creditor shall have no civil, administrative, or criminal liability under this subchapter for, and a consumer shall have no extended rescission rights under section 1635(f) of this title with respect to—
>
> \* \* \* \* \* \*
>
> (3) any disclosure relating to the finance charge imposed with respect to the transaction if the amount or percentage actually disclosed—
>
> \* \* \* \* \* \*
>
> (C) is greater than the amount or percentage required to be disclosed under this subchapter.

15 U.S.C.A. § 1649(a) (West 1998). Likewise, the plain language of this provision demonstrates Congress' intention that it should apply retroactively to transactions consummated before September 30, 1995.[10]

Both these tolerance provisions provide that if the finance charge actually disclosed is greater than the finance charge on the loan at closing, the finance charge amount and

---

9. Flagstar argues that the mortgage broker fee was actually included in the finance charge disclosure contained in the First TIL Disclosures. If true, this also defeats the Moore's argument concerning failure to disclose the mortgage broker fee. Flagstar explains this argument, however, in an October 27, 1997 letter to the Court by making reference to a loan document (the "Settlement Statement") that was not attached as an

exhibit to the complaint. Consequently, the Court does not rely on this argument for purposes of its decision on Flagstar's motion to dismiss.

10. The Federal Reserve Board has promulgated a regulation implementing these two tolerance provisions. *See* 12 C.F.R. § 226.23(h)(2) (1997).

other related disclosures are deemed accurate. Thus, to determine whether the First TIL Disclosures are deemed accurate for TILA and Reg Z purposes, this Court must ask two questions. First, was the finance charge disclosed in the First TIL Disclosures greater than that closed in the loan and later disclosed to the Moores in November 1996? And second, can the other inaccurate material disclosures in the First TIL Disclosures be fairly characterized as other disclosures that relate to or are affected by the finance charge? *See* 15 U.S.C.A. § 1635(i)(2) (West 1998); 15 U.S.C.A. § 1649(a) (West 1998).

■ The answer to the first question is obvious. The finance charge listed in the First TIL Disclosures is $603,264.47. The finance charge in the original loan documents is $601,126.97, a reduction of $2,137.50. Thus, the amount actually disclosed is greater than the amount at which the loan closed.

The answer to the second question is also obvious and has never been disputed by the Moores. A decrease or increase in the amount financed directly affects the finance charge. *See* 12 C.F.R. § 226.4(a) & (b) (1994) (finance charge is the total cost of consumer credit including financing and fees). Furthermore, the annual percentage rate varies according to the prepaid finance charge which in turn affects the finance charge. *See* 12 C.F.R. § 226.22(a)(1) (1994) (stating that the annual percentage rate "is a measure of the cost of credit ... that relates the amount and timing of value received by the consumer to the amount and timing of payments made"). The regulation implementing the tolerance provisions recognizes the interdependence of the disclosures and expressly states that the amount financed and annual percentage rate are related to the finance charge. *See* 12 C.F.R. § 226.23(h)(2) (1997) (stating that "other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate"). Lastly, in a brief filed with the Court, the Moores concede that the amount financed and annual percentage rate are directly related to the finance charge disclosure. *See* Plaintiffs' Br. in Opp'n to Defs. Flagstar and MAS's Sup-

plemental Reply Br. in Supp. of Mot. to Dismiss 4, 5, 7 (Nov. 21, 1997).

In conclusion, the finance charge disclosed in the First TIL Disclosure is greater than the finance charge closed in the loan. Furthermore, the other inaccuracies in the First TIL Disclosures are all related to the over disclosure of the finance charge. Consequently, the First TIL Disclosures are "treated as being accurate for purposes" of TILA and Reg Z. 15 U.S.C.A. § 1635(i)(2) (West 1998); *see* 15 U.S.C.A. § 1649(a) (West 1998).

**C.**

The Moore's TILA and Reg Z claims in the complaint all revolve around their not receiving the required material disclosures at consummation of the loan. Based on this incorrect allegation, the Moores demand rescission of the loan and damages under sections 1635 and 1640 of TILA. Since this Court finds as a matter of law that the disclosures they received were adequate to serve as material disclosures, the Moore's have failed to state a claim under TILA or Reg Z. Consequently, Flagstar's motion to dismiss is GRANTED, and counts 1, 2, 3, and 5 are DISMISSED as they are applied to Flagstar.

**V.**

■ If the TILA counts are dismissed, the state law counts must also be dismissed because they do not have an independent jurisdictional basis. *See* 28 U.S.C.A. § 1367(a) (West 1993) (district courts have supplemental jurisdiction only when they have original jurisdiction); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir. 1991). There is no diversity among the parties, nor is diversity jurisdiction alleged in the complaint. Accordingly, the remaining state law counts (counts 4, 6, and 7) in the Moores' complaint are DISMISSED as they are applied to MAS, Crosstate, and Flagstar.

## VI.

For the reasons stated, Flagstar and MAS's motions to dismiss the complaint are GRANTED. Crosstate's motion to dismiss was converted to a motion for summary judgment at the oral argument of this matter, and summary judgment in favor of Crosstate is GRANTED.

IT IS SO ORDERED.